[No. 9381–9–I.   Division One.   August 23, 1982.]

CHARLOTTE UNTERSTEINER, *Respondent,* v. NORBERT UNTERSTEINER, *Appellant.*

*Frank Retman,* for appellant.

*Bobbe Jean Bridge,* for respondent.

ANDERSEN, C.J.—

## FACTS OF CASE

Norbert Untersteiner appeals the trial court's entry of judgment in favor of his former wife, Charlotte Untersteiner, an Austrian national.

The uncontroverted facts are these.

Mr. and Mrs. Untersteiner, who were Austrian citizens, were married in Austria in 1951. In 1962, Mr. Untersteiner moved to Seattle, Washington, while Mrs. Untersteiner and the parties' three children remained in Austria. On March 9, 1964, Mrs. Untersteiner filed for divorce in Austria. A decree of divorce was entered and became final as of October 18, 1964. Mr. Untersteiner, who lived in Seattle throughout the Austrian divorce proceedings, waived his right to personally appear in the divorce action and at all times was represented therein by Austrian counsel.

On October 14, 1964, prior to the Austrian divorce decree becoming final, Mr. Untersteiner through his Austrian counsel proposed an arrangement for settlement of his alimony and child support obligations. On October 19, 1964, after finalization of the divorce decree, the former wife accepted her former husband's offer.

The 1964 agreement of the parties provided that the former husband would make monthly payments to his former wife in the sum of AS (Austrian Schillings) 2,000 as alimony and AS 1,500 as child support for each of the par-

ties' three children.[1] Pursuant to the terms of the agreement, the alimony and child support payments were subject to adjustment in accordance with the Austrian cost of living index in the event it varied up or down by 5 percent. Further, the agreement with respect to both alimony and child support was to be effective so long as the former husband continued to live abroad, but in the event of his return to Austria it would be subject to modification at the request of either party.

The former husband complied with the agreement until 1967 when his child support and alimony payments fell short of the amount due. The former wife then instituted an action in Austria for collection of the delinquent payments. The Austrian court ultimately approved the 1964 agreement as to the child support payments but declined to rule on the alimony issue holding that under Austrian law it lacked the required personal jurisdiction over the former husband.

On June 21, 1976, the former wife instituted the present action in the Superior Court of the State of Washington for King County seeking to collect the child support arrearages as determined by the Austrian court and the alimony arrearages in accordance with the parties' 1964 agreement. Pursuant to stipulation of the parties, the former husband accepted the Austrian court's determination on the issue of child support and a partial summary judgment was entered as to that issue.

Trial was then held on the issue of alimony. The Superior Court concluded herein that the 1964 agreement was fully enforceable in the courts of this state and on September 15, 1980, entered judgment in favor of the former wife.

One ultimate issue is presented by this appeal.

---

[1]In 1964, the rate of exchange was approximately 25 schillings to the dollar. Thus, alimony at this rate was approximately $80 a month and child support was approximately $60 a month per child.

## ISSUE

Did the trial court err by enforcing the 1964 agreement as it did?

## DECISION

CONCLUSION. The parties' 1964 agreement did not violate any fundamental public policy of this state and the trial court did not err by enforcing it.

Pursuant to the Treaty of Friendship between the United States and Austria, the former wife, as an Austrian citizen, was guaranteed the right to seek enforcement of the 1964 agreement in the courts of this state.[2] In pertinent part, the Treaty provides:

> The nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.

Treaty of Friendship, Commerce and Consular Rights, June 19, 1928, United States–Austria, art. I, 47 Stat. 1876, 1878, T.S. No. 838.

Where, as here, a contract does not incorporate a choice of law provision, "the law of the state with which the contract has the most significant relationship, except perhaps in the unusual case of usury, will govern the validity and effect of a contract." *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 899, 425 P.2d 623 (1967). *Accord, Granite Equip. Leasing Corp. v. Hutton*, 84 Wn.2d 320, 324, 525 P.2d 223, 72 A.L.R.3d 1172 (1974). This rule is equally applicable to the laws of a foreign country. *See Warner v. Kressly*, 9 Wn. App. 358, 362–63, 512 P.2d 1116 (1973). It is uncontested on appeal, and the trial court so found, that Austria has the most significant contacts with the 1964 agreement and Austrian law should govern the validity and effect of the agreement. Further, upon proper

---

[2]Contrary to the conclusion of the trial court, however, we ascertain nothing in the treaty itself which would grant the former wife greater rights than those enjoyed by any other party litigant.

pleading and proof at the trial of this present case, *see Byrne v. Cooper,* 11 Wn. App. 549, 523 P.2d 1216, 75 A.L.R.3d 170 (1974), it was established that the 1964 agreement was proper, binding and fully enforceable under the laws of Austria and not violative of any Austrian public policy.

The former husband, however, argues that we should nonetheless refuse to enforce the agreement because it violates the public policy of this state pertaining to alimony. *See, e.g., Richardson v. Pacific Power & Light Co.,* 11 Wn.2d 288, 300, 118 P.2d 985 (1941) (foreign right not enforceable where violative of strong public policy of forum state). Specifically, he argues that a violation occurs because the agreement does not consider his wife's financial condition or her future employability nor does it provide a definite termination date.

In the context of the present action, a violation of this state's public policy might occur[3] if a *court* were to award alimony to the former wife, and impose a permanent responsibility on the former husband, without first considering the former wife's financial condition and her future employability. *See, e.g., Morgan v. Morgan,* 59 Wn.2d 639, 642–43, 369 P.2d 516 (1962); *Kelso v. Kelso,* 75 Wn.2d 24, 27, 448 P.2d 499 (1968); *Cleaver v. Cleaver,* 10 Wn. App. 14, 20, 516 P.2d 508 (1973). By definition, the term "alimony" is a provision *decreed by a court* for the support of the wife. *Thompson v. Thompson,* 82 Wn.2d 352, 357, 510 P.2d 827 (1973). Such a public policy argument, however, is not applicable here.

---

[3]The public policy of this state is found in its constitution, statutes and settled rules laid down by its courts; however, just because there is a difference between the laws of a foreign state and this state is not sufficient by itself to establish a violation of this state's public policy. *Richardson v. Pacific Power & Light Co.,* 11 Wn.2d 288, 301, 118 P.2d 985 (1941). The courts of this state will not close their doors "unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep–rooted tradition of the common weal.'" *Richardson v. Pacific Power & Light Co., supra* at 304, quoting with approval Judge Cardozo in *Loucks v. Standard Oil Co.,* 224 N.Y. 99, 120 N.E. 198, 202 (1918).

■ The case before us involves something else, namely, the enforcement of an independent contract voluntarily proposed by the former husband, executed after the finalization of an Austrian decree of divorce and never incorporated into that decree by a court. Rather than offending the public policy of this state, "[a]n agreement of a husband to pay a designated amount of support is an undertaking which is favored by the courts." *Kinne v. Kinne*, 82 Wn.2d 360, 363, 510 P.2d 814 (1973). Nothing in law, public policy or reason prohibits a former spouse from *voluntarily* and formally obligating himself or herself to do more than the law requires in providing support for a former spouse. *Kinne v. Kinne, supra* at 363.

Accordingly, the 1964 agreement between the parties to this action did not violate the public policy of this state. Because the agreement is enforceable under the laws of Austria, the trial court did not err in requiring that the former husband abide by the terms of his agreement.

Having decided this case on the basis stated, it is unnecessary to address the former husband's other contentions.

The parties will bear their own costs and attorneys' fees.

Affirmed.

SWANSON and CORBETT, JJ., concur.