989 P.2d 558 (1999)
98 Wash.App. 127
Rufus Dean RAINS, Respondent,
v.
STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, DIVISION OF CHILD SUPPORT, and Sonia Berman Rains, Appellants.
No. 17841-2-III.
Court of Appeals of Washington, Division 3, Panel Seven.
December 2, 1999.
Reconsideration Denied February 11, 2000.
*559 Paul G. Cornelius, Deputy Prosecuting Attorney, Silas Edward Carroll, III, Spokane, for Appellants.
William J. Powell, Powell & Morris, Spokane, for Respondent.
KURTZ, J.
Sonia Berman Rains and Rufus Dean Rains, both American citizens, were married in Italy in 1970 and adopted twin daughters in 1972. When the couple separated in 1977, a consensual separation agreement was entered in Catania, Sicily, and Mr. Rains was ordered to pay child support. Italian courts subsequently entered several other orders related to child support. Mr. Rains returned to the United States in 1990. Four years later, at Ms. Rains' request, the Washington Division of Child Support (hereinafter "DCS") commenced administrative proceedings to enforce the most recent Italian support order pursuant to RCW 74.20. After an administrative law judge determined that the Italian order was enforceable, the State began collection by withholding $1,000 per month from Mr. Rains' government pension. Mr. Rains filed this action seeking a declaration that the Italian support order was unenforceable. The court granted Mr. Rains' motion for summary judgment, concluding that comity should not be granted to the Italian support order because enforcement of the order would contravene Washington's public policy limiting obligations for post-majority support. The court also entered a judgment against the State for the amount taken from Mr. Rains' pension. The State and Ms. Rains appeal.
We conclude that while DCS did not have statutory authority to enforce the Italian support order administratively, Washington courts would enforce it as a matter of comity. Accordingly, the matter is remanded to the superior court for a hearing to determine the amount, if any, of Mr. Rains' support obligation. Pending this hearing, the judgment against the State ordering the refund of payments *560 is reversed. This matter is reversed in part and remanded for the entry of a declaratory judgment in conformity with the court's opinion.

FACTS
Rufus Dean Rains and Sonia Berman Rains were married in Italy in 1970 and later adopted twin girls born on March 24, 1972. Mr. and Ms. Rains separated in August 1977. A consensual separation agreement was entered in Catania, Sicily, in April 1985. This order required Mr. Rains to pay $750 per month to Ms. Rains for support of the children who had lived with her following the separation. Several other decrees were later entered by Italian courts directing Mr. Rains to pay child support for his two daughters. The most recent decree, dated April 12, 1989, ordered Mr. Rains to pay child support in an amount equivalent to $900 per month.
Both Mr. Rains and Ms. Rains are university graduates. Mr. Rains was employed for many years as the principal at schools operated by the American military in Europe. He now receives a government pension. Ms. Rains continues to reside in Italy but receives social security. She voluntarily submitted to the jurisdiction of superior court.
The twin daughters, Dana and Rosa Gabriella, reached 18 years of age on March 24, 1990, and completed secondary school in June 1990. In August 1990, Mr. Rains retired and moved back to the United States. There is a dispute as to whether Mr. Rains was in arrears in his child support payments when he left Italy.
Rosa Gabriella entered college at the University of Swansea in Wales in the fall of 1990 and graduated in June 1993. She then began employment with the University of Catania in Sicily. Dana attended college in Florida for three weeks in the fall of 1990, but then returned to Sicily and resided with her mother for the remainder of the school year. In the fall of 1991, Dana enrolled in the University of Swansea in Wales and graduated in June 1995. She became employed in Sicily in January 1996 as a secretary to a psychiatrist.
There is considerable dispute as to the amount of support Mr. Rains provided during the girls' college years. Ms. Rains states that she was the primary provider for the girls and that Mr. Rains sent some money to Rosa Gabriella but that these amounts were "woefully inadequate, and poorly timed." Mr. Rains maintains he contributed considerable amounts toward the girls' college years.
On October 20, 1994, DCS received an application for nonassistance support enforcement services from Ms. Rains, forwarded from her counsel in Rome, Italy. Initially DCS refused to initiate procedures to collect the support obligation in the absence of a court order requiring support after the children turned 18. This decision was appealed by Ms. Rains on the basis that under Italian law, the obligation of child support does not cease at age 18, but instead continues until the child is capable of supporting himself or herself in an "appropriate" manner.
After an adjudicative hearing, the administrative law judge concluded the support order was partially enforceable under the doctrine of comity and the Italian order should be recognized and enforced to the extent of support owed through the children's graduation from college. The administrative law judge determined that support past the children's graduation from college would contravene Washington public policy. Eventually, a DCS officer calculated a support debt of $53,000, using $900 for 59 months from September 1990 through June 1995. Mr. Rains continued to challenge both the decision of the administrative law judge and DCS's calculation of his support debt. As a result, the debt was reduced to $47,700, the reduction being made because during part of the time for which support could be collected, only one child was pursuing undergraduate education. Beginning October 1, 1996, DCS began withholding $1,000 per month from Mr. Rains' pension.
On March 21, 1997, Mr. Rains filed a complaint for declaratory relief asking the superior court to determine:
1. No child support was due for which the Division of Child Support had jurisdiction to provide support enforcement services.

*561 2. In the event the court determines that post-majority educational support is enforceable under the Italian decree, the amount due should be redetermined, providing for no support for Dana Rains during the year 1990-1991, and allowing plaintiff credit for educational support which he has previously paid.
3. Entry of an order vacating the order to withhold and deliver issued by the Division of Child Support on July 29, 1996.
4. Judgment for a refund of payments heretofore unlawfully collected by and for defendants.
5. Costs of suit and attorney's fees.
6. Such other and further relief as may be proper.
Mr. Rains subsequently filed a motion for summary judgment. The court determined that enforcement of the Italian support order would contravene Washington public policy and that comity should not be granted. The court further concluded that DCS was without authority to enforce the support order and entered a judgment against the State in the sum of $13,000 for the amount taken from Mr. Rains' pension under the Order to Withhold and Deliver. The State and Ms. Rains appeal.

ANALYSIS
Did DCS have the authority to enforce the Italian support order under RCW 26.23.045, RCW 74.20 or RCW 74.20A?
The State contends DCS had the authority to provide nonassistance support services to Ms. Rains pursuant to RCW 26.23.045 and RCW 74.20.040(2). According to the State, these services were provided in accordance with the procedures established in WAC 388-14-300 and the actions taken by DCS did not violate Mr. Rains' due process rights. Mr. Rains contends that DCS's authority is limited and that DCS has only discretionary authority to accept nonassistance enforcement requests under RCW 74.20.
The term "foreign" is used to refer to judgments of other states as well as to judgments of other countries. Different mechanisms apply to determine the enforceability of each of the two types of "foreign" judgments. Federal and state court judgments are enforced in sister states pursuant to the full faith and credit clause of the United States Constitution article IV, section 1, and 28 U.S.C.A. § 1738. Tonga Air Servs., Ltd. v. Fowler, 118 Wash.2d 718, 725-26, 826 P.2d 204 (1992). In the absence of a contravening treaty or federal statute, state law governs the recognition of foreign country judgments in the United States. Id. at 726, 826 P.2d 204. In conducting our inquiry, we must first determine whether any Washington statutes govern the recognition and enforcement of the Italian support order. If no Washington statutes apply, we must then consider the principles of comity.
The general Washington statutes related to the enforceability of foreign judgments are not applicable here. "Foreign judgment" is defined in the Uniform Enforcement of Foreign Judgments Act, RCW 6.36, to include any judgment "of a court of the United States or of any state or territory which is entitled to full faith and credit[.]" RCW 6.36.010(1). Similarly, the Uniform Foreign Money-Judgments Recognition Act, RCW 6.40, does not apply to support orders. RCW 6.40.010(2). Likewise, the international application of the Uniform Child Custody Jurisdiction Act, RCW 26.27, is limited to judgments related to child custody, not child support.
More specifically, Washington statutes provide two methods of interstate collection and enforcement of child support obligationsjudicial enforcement under the Uniform Interstate Family Support Act (UIFSA), RCW 26.21, and administrative enforcement under RCW 74.20 and RCW 74.20A. Neither DCS nor Ms. Rains sought enforcement under the UIFSA. Instead, they sought to enforce the Italian support order administratively under RCW 74.20, RCW 74.20A, and WAC 388-14.
RCW 74.20.040(2) provides that the secretary of DCS "may accept a request for support enforcement services on behalf of persons who are not recipients of public assistance and may take appropriate action to establish or enforce support obligations *562 against the parent or other persons owing a duty to pay moneys." Definitions for terms used in RCW 74.20 and RCW 74.20A are contained in RCW 74.20A.020. A "support obligation" is defined as "the obligation to provide for the necessary care, support, and maintenance, including medical expenses, of a dependent child or other person as required by statutes and the common law of this or another state." RCW 74.20A.020(4) (emphasis added). The term "state" is defined as "any state or political subdivision, territory, or possession of the United States, the District of Columbia, and the Commonwealth of Puerto Rico." RCW 74.20A.020(11).
DCS had no authority to proceed administratively and enforce the support obligation here because this obligation had been established under Italian law and not by the law of another "state." The purpose of RCW 74.20 is to provide a more effective and efficient way to enforce child support obligations rendered by sister states and to lighten the burden of taxpayers who may be supporting children while the persons responsible are avoiding their obligations. RCW 74.20.010. It would be a waste of time and resources to require litigants to go to court to enforce support obligations protected by the full faith and credit clause. It follows then that RCW 74.20 and RCW 74.20A limit DCS's enforcement of judgments of foreign countries because these judgments are not granted automatic recognition under the full faith and credit clause.
Should the Italian support order be enforced as a matter of comity?
The State and Ms. Rains maintain the doctrine of comity directs this court to give full effect to foreign judgments rendered by impartial tribunals where it is demonstrated that the tribunal had jurisdiction over the parties and where the parties were given the opportunity to be heard.
Mr. Rains contends the Italian support order should not be enforced in Washington. He emphasizes that under Italian law, a child support obligation continues for an unspecified period of time until the child is capable of supporting himself or herself in an appropriate manner. No court order is required. Support ends when the parent upon whom the support obligation is imposed proves he or she has put the child in a position to assume a suitable career or has given the child an opportunity for sufficient further education to exercise a lucrative activity. Mr. Rains points out that under Washington law, courts cannot enforce an obligation for post-majority support unless the decree expressly provides that support will continue past emancipation. Mr. Rains asserts that enforcement of the Italian support obligation would contravene Washington public policy that requires an unambiguous statement in the decree imposing an obligation for post-majority support.
"The doctrine of comity directs that we give full effect to foreign judgments, except in extraordinary cases." State v. Meyer, 26 Wash.App. 119, 127, 613 P.2d 132 (1980). RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98 (1971) provides: "A valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned." A judgment is valid if the court had jurisdiction, there was notice, and the court was competent. RESTATEMENT, supra § 92;[1]In re Custody of R., 88 Wash.App. 746, 756-57, 947 P.2d 745 (1997) (citing RESTATEMENT, supra § 98 cmt. c, § 92, § 104).
A judgment rendered in a foreign jurisdiction will usually be given the same effect as the judgment of a sister state. RESTATEMENT, supra § 117 cmt. c. Section 117 *563 provides that: "A valid judgment rendered in one State of the United States will be recognized and enforced in a sister State even though the strong public policy of the latter State would have precluded recovery in its courts on the original claim." Enforcement will usually be accorded to the judgment of a foreign country unless the original claim is "repugnant to fundamental notions of what is decent and just in the State where enforcement is sought." RESTATEMENT, supra § 117 cmt. c.
Mr. Rains does not contend the Italian support order was obtained by fraud nor does he challenge the competency of the Italian court or the procedure used to obtain the Italian order. Rather, Mr. Rains contends the Italian support order is not entitled to comity because it is open-ended and has no termination point. He asserts enforcement of this order would contravene Washington's public policy limiting obligations for post-majority support. In making this argument, he relies on Untersteiner v. Untersteiner, 32 Wash.App. 859, 650 P.2d 256 (1982), in which the court explained that a violation of Washington's public policy might occur if a foreign court were to impose a permanent obligation to pay alimony. Id. at 863-64, 650 P.2d 256.
Mr. Rains is mistaken to the extent he believes the Italian support order is open-ended. Mr. Rains' obligation to support his children continues until they are no longer dependent as determined by Italian law. The concept of dependency is used in Washington courts as well. In Childers v. Childers, 89 Wash.2d 592, 597, 575 P.2d 201 (1978), the court determined that the obligation to pay child support was based on dependency rather than minority. A dependent child is "one who looks to another for support and maintenance, one who is in fact dependent, one who relies on another for the reasonable necessities of life." Id. at 598, 575 P.2d 201.
Mr. Rains further contends the enforcement of the Italian support order is against public policy because the Italian order fails to fulfill the Washington procedural requirement that obligations for post-majority support must be set forth clearly in the decree. The question we must address then is whether the enforcement of an obligation for post-majority support is "repugnant" to Washington public policy where the support is for the purpose of postsecondary education and the obligation is established by operation of foreign law rather than the dictates of a decree.
Under RCW 26.09.100(1), Washington superior courts have jurisdiction to order postsecondary educational support for dependent children who have reached the age of majority. Childers, 89 Wash.2d at 597, 575 P.2d 201. A support obligation may continue beyond a child's majority if the decree provides that support is to continue until the child is no longer dependent. Id. at 597 n. 1, 575 P.2d 201. RCW 26.09.170(3) provides that "[u]nless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child[.]" Emancipation occurs when the child reaches the age of majority or is emancipated in fact, whichever occurs first. In re Marriage of Gimlett, 95 Wash.2d 699, 704, 629 P.2d 450 (1981); In re Marriage of Nielsen, 52 Wash.App. 56, 59, 757 P.2d 537 (1988).
Even if the original decree terminated child support at emancipation, the Gimlett court concluded a court could modify the decree to grant post-emancipation support at the request of a party meeting the requirements of RCW 26.09.170. Gimlett, 95 Wash.2d at 704, 629 P.2d 450. Gimlett has been interpreted to authorize such modification where the movant has filed a motion to modify before the termination of support at emancipation or under the decree provisions. Balch v. Balch, 75 Wash.App. 776, 779, 880 P.2d 78 (1994). In explaining the legislative requirement that post-majority support must be expressly provided in the decree, the Gimlett court noted that "[t]he support-paying parent is given advance notice of the termination date or event, rather than being forced to wait for some elusive or fortuitous date of the dependency cessation." Gimlett, 95 Wash.2d at 703, 629 P.2d 450. The Balch court too looked to see whether the language in the decree was "sufficient to put the payor parent on notice that the child support obligation may continue after majority." Balch, 75 Wash.App. at 780, 880 P.2d 78.
*564 These cases demonstrate that, under Washington law, an obligation to provide post-majority support can be imposed provided the support-paying parent has notice that the support obligation will extend past the age of majority. Of equal importance, the Washington scheme is based on the presumption that a child is not dependent past the age of majority. Washington courts evaluate support obligations with this presumption in mind and Washington litigants proceed based on this presumption. In effect, Mr. Rains contends the Italian support order is repugnant to Washington public policy because it was not written to comply with Washington statutes and the expectations of Washington litigants. However, "just because there is a difference between the laws of a foreign state and this state is not sufficient by itself to establish a violation of this state's public policy." Untersteiner, 32 Wash.App. at 863 n. 3, 650 P.2d 256.
To some extent, Mr. Rains is rightit would be repugnant to Washington public policy to require a Washington litigant to provide support past the age of majority without first giving some advance notice to the support-paying parent. However, it is not repugnant to Washington public policy to require a litigant to provide support past the age of majority with advance notice. While a Washington litigant is entitled to rely on the presumption that support will terminate at the age of majority, Mr. Rains was not entitled to rely on the same presumption because his support obligation was established under a different scheme. Under Italian law, a support obligation continues until the child is capable of supporting himself or herself in an appropriate manner. Support ends when the support-paying parent proves that he has put the child in a position to assume a suitable career or has given the child an opportunity for sufficient further education to exercise a lucrative activity. Enforcement of the Italian support order here would not violate Washington public policy because Mr. Rains, as a litigant in the Italian courts, was given notice of the fact that his support obligation might extend past the age of majority.
Mr. Rains contends that even if the Italian order is enforceable, Washington public policy limits some aspects of the post-majority obligation. He contends he is not obligated to provide support for: (1) the year when Dana Rains was over 18 not attending college, (2) any time beyond Dana's 23rd birthday on March 24, 1995, and (3) the year when Rosa Gabriella was in graduate school. In making these arguments, Mr. Rains reads the Italian support order as imposing an obligation for secondary education rather than support based on dependency. It is equally possible that Italian law presumes the child is dependent until the support-paying parent demonstrates otherwise. Regardless, the Italian support order must be enforced as entered and the court determining Mr. Rains' support obligation, if any, must look to Italian law to determine when Mr. Rains' support obligation terminated.
In summary, there is in Washington law a strong public policy in favor of enforcing valid support orders. This includes the Italian support order that is the subject of this litigation even though Italian law differs in some respects from Washington law in determining a parent's post-majority support obligation. We conclude the Italian support order should be enforced as a matter of comity.
Is Ms. Rains entitled to attorney fees?
Ms. Rains contends she is entitled to her attorney fees at both the trial level and on appeal pursuant to RCW 26.18.160. She further contends costs, excluding attorney fees, may be awarded under RCW 7.24.100 or that her attorney fees may be awarded under RCW 4.28.185(5).
Ms. Rains is not entitled to an award of attorney fees. The matter before this court is an action for a declaratory judgment. RCW 7.24.100 permits courts to award costs "as may seem equitable and just." As Ms. Rains herself acknowledges, attorney fees are not included. Similarly, RCW 26.18.160 provides for an award of attorney fees in any action "under this chapter." This action was not brought under RCW 26. Ms. Rains is also not entitled to attorney fees under the long-arm statute, RCW 4.28.185(5). Fee awards under this provision are limited to those amounts necessary to compensate the prevailing party for the added expense resulting *565 from the plaintiff's use of the long-arm statute. Scott Fetzer Co. v. Weeks, 114 Wash.2d 109, 120, 786 P.2d 265 (1990). Here Ms. Rains not only initiated administrative proceedings in Washington, but, with regard to this action, consented to jurisdiction.

CONCLUSION
We conclude DCS did not have authority to enforce the Italian support order. Consequently, we vacate the Order to Withhold and Deliver issued by DCS on July 29, 1996. We further conclude the superior court should enforce the Italian support order as a matter of comity. The matter is remanded to the superior court for a hearing to determine the amount, if any, of Mr. Rains' support obligation. Pending the outcome of that hearing, the judgment against the State ordering the refund of payments is reversed. We, therefore, reverse in part and remand for the entry of a declaratory judgment in conformity with this opinion.
SCHULTHEIS, C.J., and KATO, J., concur.
NOTES
[1] RESTATEMENT, supra § 92 states:

"A judgment is valid if
"(a) the state in which it is rendered has jurisdiction to act judicially in the case; and
"(b) a reasonable method of notification is employed and a reasonable opportunity to be heard is afforded to persons affected; and
"(c) the judgment is rendered by a competent court; and
"(d) there is compliance with such requirements of the state of rendition as are necessary for the valid exercise of power by the court."