IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 82192-0-I |
| | ) | |
| MADHAVAN VIJAYABOOPATHY, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PRAMILA MADHAVAN, n/k/a | ) | UNPUBLISHED OPINION |
| PRAMILA LAWRANCE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

VERELLEN, J. — Madhavan Vijayaboopathy challenges the trial court's parenting plan restricting his residential time to the discretion of his 15-year-old daughter. Because the court found that Vijayaboopathy had a history of domestic violence under RCW 26.09.191(2)(a)(iii) against the mother, Pramila Lawrance, the court did not abuse its discretion in restricting his residential time and also considering the "wishes" of their "sufficiently mature" daughter.

Vijayaboopathy also challenges the trial court's maintenance award, division of property, child support order, and its attorney fee award in favor of Lawrance. But he fails to properly assign error to specific findings of fact. Further, even if we ignore his deficient assignments of error, substantial evidence supports the trial court's findings. The court did not abuse its discretion.

We award attorney fees on appeal to Lawrance.

Therefore, we affirm.

FACTS

In 2001, Madhavan Vijayaboopathy married Pramila Lawrance[1] in India. Shortly after they were married, he started physically abusing her.

In 2006, Vijayaboopathy, Lawrance, and their two daughters moved to the United States, but they kept their residence in India. They entered the United States on an H1-B visa sponsored by Vijayaboopathy's employer, T-Mobile.

A few years later, the family, including daughters, Mokshita and Shivani,[2] moved to Bothell, Washington. On April 7, 2019, after 19 years of marriage, Vijayaboopathy filed for divorce.

During the marriage, Vijayaboopathy removed thousands of dollars from "community funds" and transferred them to a "life coach," Ms. Holloway.[3] Vijayaboopathy also refinanced their Bothell residence without Lawrance's knowledge and failed to pay the mortgage. As a result, their "loan [on the property] is now in foreclosure."[4]

At the time of trial, Vijayaboopathy earned approximately $19,008 a month as a senior architect for T-Mobile. Lawrance's ability to work in the United States

---

[1] Pramila Madhavan changed her name to Pramila Lawrance.

[2] We refer to the daughters by their first names for clarity.

[3] Clerk's Papers (CP) at 106 (Finding of Fact (FF) 22.3(a)); Report of Proceedings (RP) (Oct. 6, 2020) at 219.

[4] CP at 106 (FF 22.3(a)).

was complicated by her immigration status, and she referred to herself as a stay-at-home mother.

After a bench trial, the trial court entered written findings of fact and conclusions of law.  The court entered a final parenting plan restricting Vijayaboopathy's residential time to the sole discretion of 15-year-old Mokshita.  The court entered a final divorce order requiring Vijayaboopathy to pay Lawrance maintenance of $8,000 a month for nine years.  The court also awarded the real properties to Lawrance, divided the community personal property in favor of Vijayaboopathy, distributed the community debt in favor of Lawrance, and held each parent personally responsible for their individual debt.  The court entered a final child support order requiring Vijayaboopathy to pay Shivani's college tuition.  And the court awarded Lawrance attorney fees based upon Vijayaboopathy's intransigence.

Vijayaboopathy appeals.

ANALYSIS

I.  Parenting Plan

Vijayaboopathy argues that the trial court erred by depriving him "of any parenting rights to see his daughter," Mokshita.[5]

---

[5] Appellant's Br. at 13.  Shivani was 18 years of age at the time the court entered the parenting plan.

We review a parenting plan for an abuse of discretion.[6]  A trial court abuses its discretion when its decisions are based on untenable grounds or made for untenable reasons.[7]  Unchallenged findings of fact are accepted as verities on appeal.[8]  An appellant is required to specifically assign error identifying any portion of a finding of fact challenged on appeal.[9]

We note that Vijayaboopathy did not properly assign error to any findings of fact.[10]  And even if an appellant properly assigns error, a finding of fact is sustained on appeal if supported by substantial evidence.[11]  "Substantial evidence is that which is sufficient to persuade a fair-minded person of the truth of the matter asserted."[12]

---

[6] Katare v. Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012); In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

[7] Katare, 175 Wn.2d at 35.

[8] Matter of Custody of A.T., 11 Wn. App. 2d 156, 163, 451 P.3d 1132 (2019).

[9] RAP 2.5(a).

[10] In his reply brief, Vijayaboopathy cites authority that we may waive the failure to make proper assignments of error to specific portions of the findings of fact if the brief makes the nature of the challenge clear.  But this exception is discretionary and also requires that the brief "include the challenged findings in the text" of the brief.  See Harris v. Urell, 133 Wn. App. 130, 137, 135 P.3d 530 (2006) (cited in Appellant's Reply Br. at 9).  Here, Vijayaboopathy's briefing does not adequately make specific reference to the challenged portions of the findings of fact.  Therefore, we are not compelled to apply this exception.

[11] Katare, 175 Wn.2d at 35 (citing Ferree v. Doric Co., 62 Wn.2d 561, 568, 383 P.2d 900 (1963)).

[12] Id. (citing King County v. Cent. Puget Sound Growth Mgmt. Hr'gs Bd., 142 Wn.2d 543, 561, 14 P.3d 133 (2000)).

RCW 26.09.191(2)(a)(iii) permits a trial court to impose restrictions on a parent's residential time when a parent has engaged in a "history of acts of domestic violence." And in imposing additional restrictions, the court can also consider "the wishes of a child who is sufficiently mature to express reasoned and independent preferences as to his or her residential schedule."[13]

Here, Lawrance testified that she suffered from domestic violence "[m]any times" during the marriage.[14] She noted that both Mokshita and Shivani have witnessed Vijayaboopathy "hitting" her.[15] Lawrance stated that Vijayaboopathy has been arrested more than five times for domestic violence and that most recently, in April of 2019, he was convicted of assault. Lawrance also testified that their 15-year-old daughter, Mokshita "doesn't want to go" to Vijayaboopathy's apartment because "[h]e's stopped talking with them" and "he's acting weird."[16] As a result, in the final parenting plan, the trial court limited Vijayaboopathy's residential time with Mokshita by stating, "Mokshita shall have visits with her father at her sole discretion. If Mokshita desires to visit her father, she may determine the length and location of such visits."[17]

Substantial evidence supports the trial court's domestic violence finding under RCW 26.09.191(2)(a)(iii) and its finding that Mokshita "does not want to

---

[13] RCW 26.09.187(3)(a)(vi).

[14] RP (Oct. 5, 2020) at 81.

[15] Id. at 87-88.

[16] Id. at 90.

[17] CP at 108.

5

engage in visits with her father at this time."[18]  Because 15-year-old Mokshita was sufficiently mature to indicate her preferences regarding her residential schedule, the trial court did not abuse its discretion in restricting Vijayaboopathy's residential time with her.

II.  Maintenance

Vijayaboopathy contends that the trial court erred in the amount of maintenance it awarded to Lawrance.  We review a maintenance award for an abuse of discretion.[19]

"'The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just.'"[20]  The court can consider the following nonexclusive factors in awarding maintenance:

> (1) the financial resources of the party seeking maintenance; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage, (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; (6) and the ability of the spouse from whom maintenance is sought to meet his or her needs and obligations while providing the other spouse with maintenance.[21]

---

[18] CP at 105-06 (FF 22.1(b)).

[19] In re Marriage of Valente, 179 Wn. App. 817, 821-22, 320 P.3d 115 (2014).

[20] Matter of Marriage of Anthony, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019) (quoting Bulicek v. Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)).

[21] Valente, 179 Wn. App. at 821-22 (citing RCW 26.09.090).

While the trial court must consider the above factors, "it is not required [that the court] make specific factual findings on all of the factors."[22]

Here, Lawrance testified that she has been unemployed since entering the United States. Her immigration attorney, Neha Vyas, testified that when her divorce is final, she will be "out of status."[23] And Vyas also testified that Lawrance intends to apply for U nonimmigrant status, but due to long waiting lists, she will be unable to lawfully work in the United States for five years.

Lawrance stated that during her 19-year marriage, she and her family lived a luxurious lifestyle. Lawrance testified that in 2019, Vijayaboopathy earned $225,346 and that each year, his salary increases.[24] Lawrance also testified that during the marriage, Vijayaboopathy transferred approximately $39,000 to Ms. Holloway and has since transferred approximately $105,000 to her. The court expressly found that these transfers to Ms. Holloway were made by Vijayaboopathy "to hide the funds" from Lawrance and the court.[25] Substantial evidence supports this finding.

---

[22] Anthony, 9 Wn. App. 2d at 564 (quoting Mansour v. Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004)).

[23] RP (Oct. 6, 2020) at 247-48.

[24] See CP at 107 (FF 22.3(g)). Vijayaboopathy contends the trial court was mistaken that his monthly earnings of $19,008 did not include his bonus ($25,000 on an annual basis) and thereby double counted his annual bonus. But even if we ignore his failure to properly assign error to this portion of the finding of fact, the determination of consequence was the great difference in earning capacity of the parties. Even if we disregard the annual bonus, Vijayaboopathy's earning capacity far exceeds Lawrance's.

[25] CP at 106 (FF 22.3 (a)).

Substantial evidence also supports the trial court's determination that Lawrance was in need of maintenance and that Vijayaboopathy had the ability to pay. Substantial evidence supports the findings of a 19-year marriage, a great difference in earning capacity, and an "upper-middle class standard of living during their marriage.[26] And in this setting, the court's express emphasis upon the father's attempt to hide assets from the court is a legitimate concern regarding the true picture of the assets available when evaluating the amount of maintenance.[27] Because the court's maintenance award was "just," the court did not abuse its discretion.

III. Division of Property

Vijayaboopathy challenges the property distribution including his contention that the trial court made "a series of computational errors."[28]

The trial court has broad discretion in distributing marital property.[29] "The trial court's distribution of property in a dissolution action is guided by statute, which requires it to consider multiple factors in reaching an equitable conclusion. These factors include (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and

---

[26] CP at 107 (FF 22.3(e)).

[27] The final factor that should be considered in awarding maintenance is a spouse's "dissipation and probable concealment of assets." In re Marriage of Morrow, 53 Wn. App. 579, 588, 770 P.2d 197 (1989) (citing In re Marriage of Nicholson, 17 Wn. App. 110, 118-19, 561 P.2d 1116 (1977)).

[28] Appellant's Br. at 6.

[29] In re Marriage of Rockwell, 141 Wn. App. 235, 242, 170 P.3d 572 (2007).

(4) the economic circumstances of each spouse."[30]  And in weighing these factors, the court "may properly consider a spouse's waste or concealment of assets."[31]

Here, the trial court favored Lawrance with a 71 to 29 percent split of the assets.  The court noted that due to Vijayaboopathy's actions during the marriage, there were "limited assets to divide."[32]  The trial court awarded the equity in the Bothell and India residences to Lawrance.  The court divided the community personal property marginally in Vijayaboopathy's favor.[33]  The court ordered Lawrance to pay the mortgage on the India residence and ordered the rest of the community debt to be paid by Vijayaboopathy, including three different loans he obtained.  And the trial court held each responsible for their separate debt.

In its maintenance findings, the court noted that during the marriage Vijayaboopathy took "huge sums of community funds and transferred them to Ms. Holloway, to hide the funds" from Lawrance and the court.[34]  The court also found that Vijayaboopathy took "on enormous amount[s] of debt unbeknownst to [Lawrance], and those funds" were never accounted for by him.[35]  Vijayaboopathy

---

[30] Id. (citing RCW 26.09.080).

[31] In re Marriage of Wallace, 111 Wn. App. 697, 708, 45 P.3d 1131 (2002) (citing In re Marriage of White, 105 Wn. App. 545, 551, 20 P.3d 481 (2001)).

[32] CP at 106 (FF 22.3(a)).

[33] Compare CP at 64 with CP at 65.

[34] CP at 106 (FF 22.3(a)).

[35] Id.  "The trial court may properly consider the property division when determining maintenance, and may consider maintenance in making an equitable division of the property."  In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997) (citing In re Rink, 18 Wn. App. 549, 552-53, 571 P.2d 210 (1977)).

fails to establish that the court abused its discretion in considering his concealment of assets in dividing the couple's property.

Vijayaboopathy's argument that the trial court committed "arithmetic errors" in its division of property focuses on the court's calculation of equity in the Bothell residence.[36] But the only finding of consequence regarding the value of the Bothell residence is unchallenged finding of fact 22.4(a), that the home "has equity in the amount of $47,894."[37] Even if we disregard the lack of an adequate assignment of error, Lawrance testified that the Bothell residence was most likely to sell for approximately $850,000 with closing costs of roughly $66,000. Vijayaboopathy argued at closing that the principal balance with delinquent amounts on the Bothell property "basically adds up to $731,580."[38]

Taken together, this record is consistent with an equity in the Bothell residence of roughly $48,000, approximately what the trial court found. And "[a] just and equitable division [of property] 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of the parties.'"[39] On this record, Vijayaboopathy does not establish an abuse of discretion in the property distribution.

---

[36] Appellant's Br. at 24-25.

[37] CP at 107.

[38] RP (Oct. 6, 2020) at 311.

[39] In re Marriage of Larson and Calhoun, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013) (citing In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).

IV. Child Support

Vijayaboopathy argues that the trial court erred by "failing to enter adequate findings" in support of its conclusion that he should be solely responsible for Shivani's college tuition.[40] We review a child support order for an abuse of discretion.[41]

"In setting child support, the trial court must take into consideration all factors bearing upon the needs of the children and the parents' ability to pay."[42] A child support order "should meet each child's basic needs and should provide any 'additional child support commensurate with the parent's income, resources and standard of living.'"[43]

Here, Lawrance testified that despite her efforts to persuade Shivani to attend a more financially affordable college such as the University of Washington, Vijayaboopathy promised to pay for Shivani to attend the University of California Santa Barbara (UCSB).[44] The trial court did not abuse its discretion in holding him solely responsible for Shivani's UCSB tuition.

---

[40] Appellant's Br. at 5.

[41] In re Marriage of Holmes, 128 Wn. App. 727, 736, 117 P.3d 370 (2005) (citing Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990)).

[42] In re Marriage of Pollard, 99 Wn. App. 48, 52, 991 P.2d 1201 (2000) (citing Matter of Marriage of Blickenstaff, 71 Wn. App. 489, 498, 859 P.2d 646 (1993)).

[43] Id. (citing RCW 26.19.001).

[44] See Untersteiner v. Untersteiner, 32 Wn. App. 859, 864, 650 P.2d 256 (1982) ("'An agreement of a husband to pay a designated amount of support is an undertaking which is favored by the courts.'") (quoting Kinne v. Kinne, 82 Wn.2d 360, 363, 510 P.2d 814 (1973)).

### V. Attorney Fees

Vijayaboopathy argues that the trial court erred in awarding attorney fees to Lawrance. We review an award of attorney fees for an abuse of discretion.[45] In an action for dissolution of marriage a trial court may award attorney fees if "one spouse's intransigence increased the legal fees of the other party."[46] Here, the trial court found Vijayaboopathy in contempt four times for his failure to pay debts and child support "demonstrat[ing] his intransigence in this case."[47] The court also noted that he filed 24 petitions and motions throughout the litigation, only one of which was granted. Based on the record before us, the trial court did not abuse its discretion in awarding Lawrance attorney fees based upon intransigence.

Additionally, both parties request attorney fees on appeal. Vijayaboopathy provides no authority in support of his assertion that he is entitled to attorney fees. Lawrance requests attorney fees on appeal under RCW 26.09.140. "RCW 26.09.140 authorizes an award of [attorney] fees after consideration of one party's need and the other party's ability to pay."[48] The parties submitted financial declarations on appeal. Each party challenges the accuracy of the other party's financial declaration. But we conclude that Lawrance has made an adequate

---

[45] Matter of Marriage of Laidlaw, 2 Wn. App. 2d 381, 392, 409 P.3d 1184 (2018).

[46] Burrill v. Burrill, 113 Wn. App. 863, 873, 56 P.3d 993 (2002) (citing In re Marriage of Morrow, 53 Wn. App. 579, 590, 770 P.2d 197 (1989)).

[47] CP at 107 (FF 22.5(c)).

[48] Burrill, 113 Wn. App. at 874.

showing of her entitlement to fees on appeal under RCW 26.09.140 subject to her compliance with RAP 18.1(d).[49]

Therefore, we affirm.

_____

WE CONCUR:

_____  _____

---

[49] There is no need for us to address Lawrance's alternative ground for attorney fees on appeal based on intransigence.