[Nos. 41388-4-II; 42187-9-II. Division Two. September 25, 2012.]

ESTATE OF ETSUKO TOLAND, *Respondent*, v. PETER PAUL TOLAND, JR., *Appellant*.

BRYCE H. DILLE, *as Personal Representative*, *Appellant*, v. PETER PAUL TOLAND, JR., *Respondent*.

*Douglas N. Kiger* (of *Blado Kiger Bolan PS*) and *Kimberly Ann Quach* (of *Lechman-Su & Quach PC*), for appellant/ respondent Peter Paul Toland Jr.

*Shannon R. Jones* (of *Campbell Dille Barnett & Smith PLLC*) (*Judy A. Dugger*, of counsel), for appellant Bryce H. Dille and resondent Estate of Etsuko Toland.

¶1 ARMSTRONG, J. — Commander Paul Toland appeals the trial court's summary judgment dismissing his petition to

intervene in the estate of his former wife, Etsuko Toland, under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW. Etsuko[1] divorced Paul in Japan where she and the parties' young daughter, Erika, lived until Etsuko's death. Paul argues that as the only remaining parent of Erika's, Etsuko's sole heir, he is an interested party under TEDRA. We agree.

¶2 In addition, the estate of Etsuko Toland (Estate) appeals the trial court's summary judgment denying registration of the Tolands' Japanese divorce decree. The Estate filed the registration action to collect money judgments the Japanese court awarded Etsuko against Paul in the Japanese divorce decree. The Estate argues the trial court erred by refusing to recognize the Japanese decree under comity principles. We affirm the trial court's summary judgment denying registration of the Japanese divorce decree because recognizing the judgment would violate public policies and fundamental rights, including Paul's parental rights as recognized under federal and state law. We reverse the trial court's order denying Paul's TEDRA petition to participate in the estate action and remand to the trial court for further proceedings consistent with this opinion.

## FACTS

### Background

¶3 Paul and Etsuko married in Japan in 1995. In 1996, the navy reassigned Paul to duty in Texas and Washington, and then it reassigned him to Japan in July 1999. On October 17, 2002, Paul and Etsuko's daughter, Erika, was born in Japan. In July 2003, Etsuko and Erika moved out of the marital home on the navy base and into a home with Etsuko's mother in Tokyo.

¶4 In November 2003, Paul and Etsuko entered into mediation, which Japanese law requires before instituting

---

[1] We refer to the Tolands by their first names for the sake of clarity.

divorce proceedings.[2] When the mediation failed, Etsuko filed for divorce in Japan. Paul was represented by Japanese lawyers during at least part of the divorce proceedings. The Japanese court orally entered a divorce order on September 29, 2005, and finalized the divorce in March 2006. The decree divided the parties' property, awarded Etsuko custody of Erika, ordered Paul to pay child support, and awarded damages to Etsuko for Paul's fault in the divorce.

¶5 On October 31, 2007, Etsuko committed suicide. Etsuko's sister, Yoko Futagi, informed Paul in December 2007 of Etsuko's death.[3] Yoko and Paul started corresponding by e-mail and telephone, apparently discussing how to bring Erika to the United States. At the same time, Akiko, Etsuko's mother, applied for and was granted guardianship of Erika in Japan without giving Paul notice of the guardianship proceedings.

PROCEDURE FOR TEDRA CASE

¶6 Yoko petitioned to probate the Estate in Pierce County, Washington. The assets listed in the Estate's inventory included the judgments from the Japanese divorce decree. The trial court appointed attorney Bryce Dille as the Estate's personal representative. The trial court appointed attorney Michael Smith as Erika's guardian ad litem because Erika is the sole heir to the Estate.

¶7 Paul filed a TEDRA petition to intervene in the proceedings. Paul asked for special notice of the proceedings and to be appointed the custodian of Erika's inheritance. The Estate moved for summary judgment on Paul's TEDRA

---

[2] In September 2003, Paul filed for divorce in Pierce County Superior Court, but he did not serve Etsuko. The action was stayed because of the parallel proceeding in Japan. After the Japanese court entered the final divorce decree, the Pierce County Superior Court dismissed the divorce action. We affirmed the dismissal. *In re Marriage of Toland*, noted at 140 Wn. App. 1015 (2007).

[3] Yoko declared that she did not believe she told Paul about the death, claiming instead that Paul called her in December and told her he knew of Etsuko's death.

petition. Apparently concerned about Paul's conflict of interest from owing the Estate money, the trial court granted the Estate summary judgment, which effectively excluded Paul from the case.

Procedure for Comity Case

¶8 In a separate action intended to collect the judgments from the Japanese divorce decree, the Estate applied to register the Japanese divorce decree under the Uniform Enforcement of Foreign Judgments Act, chapter 6.36 RCW, and the Uniform Foreign-Country Money Judgments Recognition Act, chapter 6.40A RCW. Paul answered and moved to dismiss, denying that the judgments were enforceable in Washington under the statutes pleaded.[4] The Estate abandoned its claim under chapter 6.36 RCW and relied on the saving clause in chapter 6.40A RCW to assert comity principles for registration of the decree.[5] The trial court allowed argument based on comity principles.

¶9 Following that argument, the trial court found that the Japanese divorce decree appeared facially valid because Paul had legal representation and because the decree addressed property division, support, and other matters commonly litigated in Washington divorce proceedings. But the trial court was concerned that because Paul was not given notice or the opportunity to be heard in the subsequent guardianship proceeding, his right to due process and his constitutional rights as a parent were violated. Thus, the trial court allowed another hearing for the Estate to show either that Paul received notice of the guardianship proceeding or that "fundamental due process and fairness

---

[4] The legislature has amended this statute. The amendments do not change the substance of our discussion, thus we cite to the current version.

[5] The Uniform Foreign-Country Money Judgments Recognition Act in chapter 6.40A RCW does not apply to "[a] judgment for divorce, support, or maintenance, or other judgment rendered in connection with domestic relations." RCW 6.40A.020(2)(c). The saving clause states, however, that "[t]his chapter does not prevent the recognition under principles of comity or otherwise of a foreign-country judgment not within the scope of this chapter." RCW 6.40A.090.

was available to [Paul] in any Japanese guardianship proceeding." Clerk's Papers (CP) at 293.

¶10 In a custody proceeding Paul had started in Maryland, the Estate admitted that Paul had not received notice of the guardianship proceeding in Japan; it noted that notice was not required under Japanese law. Based on this admission, Paul moved for summary judgment in the Washington case. The Estate responded with an affidavit from a Japanese attorney, Yorimichi Ishikawa. Ishikawa conceded that Paul was not provided notice, but she asserted that under Japanese law, Paul was not entitled to notice of the guardianship proceeding. Further, both Ishikawa's and Paul's expert stated that the Japanese court's granting of guardianship powers to Akiko did not bar Paul from seeking permanent custody of Erika in Japanese courts.

¶11 The trial court granted Paul summary judgment and dismissed the Estate's registration action, reasoning that Paul was denied basic fairness and due process in the Japanese guardianship proceedings. The trial court also concluded from the expert witnesses' testimony that Paul's chances of prevailing in Japan in a custody action are "slim to none" because of the "fait accompli" set up by the guardianship proceeding. Report of Proceedings (RP) (Mar. 25, 2011) at 2-3. Thus, because Japan's proceedings failed to afford Paul the fundamental rights recognized in Washington and the United States, the trial court refused to grant comity to the Japanese divorce decree. The Estate appeals that summary judgment ruling.

## ANALYSIS

### I. Standard of Review

¶12 We review a summary judgment de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). We will affirm an order granting summary judgment if, viewing the evidence in the light most favorable to the nonmoving party, we find no issues of material fact and

the moving party is entitled to judgment as a matter of law. CR 56(c); *Ranger*, 164 Wn.2d at 552. A court may grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). If the moving party meets its burden, the nonmoving party cannot rely on the pleadings but must present evidence through affidavits, depositions, or otherwise to oppose the motion. CR 56(e); *Atherton*, 115 Wn.2d at 516.

## II. TEDRA

¶13 Paul argues that the trial court erred in dismissing his motion to intervene in the probate proceeding under TEDRA because he is the only surviving parent of Erika, the sole heir to the Estate. He asserts that his fundamental liberty interest as a parent provides a right to petition under TEDRA. We agree.

¶14 TEDRA is "intended to provide nonjudicial methods for the resolution of matters" involving trusts and estates. RCW 11.96A.010. In passing TEDRA, the legislature found that prompt resolution of such matters was preferable and encouraged use of dispute resolution mechanisms other than litigation. RCW 11.96A.260. A "matter" includes "[t]he determination of any question arising in the administration of an estate . . . ." RCW 11.96A.030(2)(c). And, "any *party* may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter . . . ." RCW 11.96A.080(1) (emphasis added). A party includes "[a]ny other person who has an interest in the subject of the particular proceeding." RCW 11.96A.030(5)(i).[6]

---

[6] The statutory definition is, in part:

¶15 When interpreting a statute, we seek to follow the legislature's intent. *Bostain v. Food Express Inc.*, 159 Wn.2d 700, 708, 153 P.3d 846 (2007). Thus, we "adopt the interpretation which best advances the legislative purpose." *Bennett v. Hardy*, 113 Wn.2d 912, 928, 784 P.2d 1258 (1990). The legislature defined the TEDRA statutes broadly as "generally applicable statutory provisions for the resolution of disputes and other matters involving . . . estates." RCW 11.96A.010. "Matter" under the statute is also broadly defined. Thus, a broad reading of "any other interested person" is appropriate and would include Paul in his role as Erika's parent. Certainly, he has an interest in ensuring that the Estate is efficiently administered and that the funds it collects go to Erika. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (parents have a "liberty interest . . . in the care, custody, and control of their children"). Although Paul does not currently have custody of Erika and may be considered an estate debtor, these facts do not preclude him from being an "interested party" under the statute.

¶16 Moreover, a possible conflict of interest does not preclude Paul from participating in the Estate because allowing him to participate does not grant him authority to control the Estate assets or hinder the Estate's attempts to collect those assets.[7] Furthermore, TEDRA is intended to provide a vehicle to resolve disputes, and Paul's conflict of interest should not frustrate that statutory goal. Paul and

---

(5) "Party" or "parties" means each of the following persons who has an interest in the subject of the particular proceeding and whose name and address are known to, or are reasonably ascertainable by, the petitioner:

. . . .

(i) Any other person who has an interest in the subject of the particular proceeding.

RCW 11.96A.030.

[7] We are aware that because we are affirming the trial court's decision not to enforce the Japanese decree, the Estate lacks the power to collect the judgments through legal means. Nothing in our opinion, however, prevents Paul from voluntarily paying some or all of what he owes for child support and other judgments in the Japanese decree.

the Estate have a dispute as to whether Paul should be paying judgments that would benefit Erika. Giving Paul a voice in resolving that dispute is more likely to resolve the issues than is denying him any participation.[8]

¶17 Because TEDRA was intended to be broadly applied, and because Paul is the father of the sole minor heir to the Estate, we hold that Paul is an "interested party" under the statute. We reverse and remand for the trial court to allow Paul to participate in the probate proceedings under TEDRA.

### III. Comity

¶18 The Estate argues that the trial court erred when it granted Paul summary judgment and denied registration of the Japanese divorce decree under comity principles. We disagree.

¶19 "No law has any effect, of its own force, beyond the limits of the sovereignty from which its authority is derived." *Hilton v. Guyot*, 159 U.S. 113, 163, 16 S. Ct. 139, 40 L. Ed. 95 (1895). But under the doctrine of comity, courts have discretion to " 'give effect to the laws [and resulting judicial orders] of another jurisdiction out of deference and respect, considering the interests of each [jurisdiction].' "[9] *MacKenzie v. Barthol*, 142 Wn. App. 235, 240, 173 P.3d 980 (2007) (alterations in original) (quoting *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 160-61, 744 P.2d 1032 (1987)). This doctrine is not a rule of law but is rather a matter of "practice, convenience and expediency." *Haberman*, 109 Wn.2d at 160.

---

[8] The parties are long overdue in transferring this dispute from the antagonistic atmosphere of the courtroom to the settlement table. Paul has the right to meaningfully participate in Erika's life; she has a corresponding right to have him be a part of her life. Paul has an obligation to financially support Erika, and Akiko has the right to Paul's help in supporting Erika as long as Akiko has actual custody.

[9] *Hilton* sets forth requirements for recognizing a foreign judgment, and in doing so, it imposed a reciprocity requirement. This reciprocity holding is no longer good law in most states, including Washington. *See Tonga Air Servs. Ltd. v. Fowler*, 118 Wn.2d 718, 726, 826 P.2d 204 (1992).

¶20 When considering a comity issue, we ask whether

> there has been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries.

*Hilton*, 159 U.S. at 202; *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98 cmt. c (1971). That fair proceeding should result in a valid judgment, which "will be recognized in the United States so far as the immediate parties and the underlying cause of action are concerned." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98. A valid judgment exists where (1) the court rendering judgment had jurisdiction, (2) notice and an opportunity to be heard were afforded to the parties affected, (3) the court is competent to render judgment, and (4) the party asking for enforcement complies with the rules of the state of enforcement to enter the judgment. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 92.

¶21 Comity does not require us to enforce a valid foreign judgment where it is "so contrary to the laws" of Washington that enforcing the foreign judgment would seriously interfere with our own policy or laws. *Mirgon v. Sherk*, 196 Wash. 690, 693, 84 P.2d 362 (1938) (considering whether to enforce a usury contract); *see also Hilton*, 159 U.S. at 165 (comity " 'is the voluntary act of the nation by which it is offered, and is inadmissible when contrary to its policy' " (quoting *Bank of Augusta v. Earle*, 38 U.S. (13 Pet.) 519, 589, 10 L. Ed. 274 (1839))). Where doubt exists as to entry of a foreign judgment, we favor our own laws over the foreign laws. *Hilton*, 159 U.S. at 165. A mere difference in law is insufficient to deny enforcing the foreign judgment under comity principles. *Untersteiner v. Untersteiner*, 32 Wn. App. 859, 863 n.3, 650 P.2d 256 (1982).

¶22 The trial court refused to recognize the Japanese divorce decree, not because the underlying judgment was invalid but because subsequent legal actions in Japan did not meet our fundamental principles concerning due process and parental rights. In fact, the divorce satisfies the standards required to enter a foreign judgment under comity. The Japanese divorce proceedings allowed for a full and fair trial resulting in a Japanese divorce decree, which meets the elements of a valid foreign judgment. Because of this, the Estate argues that the trial court should have limited its inquiry to the validity of the divorce decree.

¶23 Limiting our review to the divorce decree, however, would require us to ignore the practical and constitutionally harmful consequences of the guardianship proceeding. In effect, the guardianship proceeding, including the role Akiko assumed under it, and the Japanese law concerning parental rights, nullify the parent-child relationship that our law explicitly recognizes; thus, we are compelled to conclude, as the trial court did, that we should not recognize and enforce the related divorce decree. Three basic concerns guide this conclusion.

¶24 First, under our due process principles, Paul had the right to notice of and opportunity to participate in the guardianship proceeding. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S. Ct. 652, 94 L. Ed. 865 (1950)). The evidence is undisputed that he received no notice of the guardianship proceedings, and he did not know the result until the Estate filed the instant case in March 2010.

¶25 Second, under Washington law, when Etsuko died, Paul would have been entitled to "full and complete control" of Erika absent a justifiable reason to withhold custody. RCW 26.16.125.[10] As RCW 26.09.002 explains, Washington's public policy favors fostering the parent-child relationship:

---

[10] RCW 26.16.125 reads in pertinent part, "[T]he rights and responsibilities of the parents in the absence of misconduct shall be equal . . . and in case of one

> In any proceeding between parents under this chapter, the best interests of the child shall be the standard by which the court determines and allocates the parties' parental responsibilities. The state recognizes the fundamental importance of the parent-child relationship to the welfare of the child, and that the relationship between the child and each parent should be fostered unless inconsistent with the child's best interests.

Yet, because Erika was living with Akiko when Etsuko died, Akiko assumed full parental control through the guardianship proceeding. The Japanese law experts explained that the guardianship action does not hinder Paul's right to bring a custody action in the Japanese courts. But the Japanese courts afford no presumption in a custody action that the biological parent should have custody, although they consider it to be a relevant fact. And, even if Paul obtained a custody order from Japan, undisputed evidence shows that the Japanese court would likely not enforce it. H.R. Res. 1326, 111th Cong. (2010) (stating that Japan has no existing process to enforce custody or visitation orders without the voluntary cooperation of the other spouse).

¶26 Third, Paul's substantive due process right as a parent will be abridged if we recognize the Japanese decree. Federal law recognizes a parent's fundamental substantive due process right to parent his child. *Troxel*, 530 U.S. at 65; *see also Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534-35, 45 S. Ct. 571, 69 L. Ed. 1070 (1925); *Wisconsin v. Yoder*, 406 U.S. 205, 232-33, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972). "[T]he interest of parents in the care, custody, and control of their children[ ]is perhaps the oldest of the fundamental liberty interests recognized by this Court." *Troxel*, 530 U.S. at 65.

¶27 Although Japanese courts use a "welfare of the child" standard in custody proceedings, which appears to

---

parent's death, the other parent shall come into full and complete control of the children and their estate." The legislature amended this statute after Etsuko died. Because the amendments do not change the substance of the statute, we cite to the current version.

meet our "best interests of the child" standard, they apparently do not recognize the same substantive due process right of a parent found in our federal law. CP at 444. In determining the "welfare of the child," Japanese courts consider (1) the parent's relationship with the child, (2) past support provided by the parent, (3) future ability to support the child, (4) living arrangements if the child resides with the parent, (5) the child's interests in schooling and friends, and (6) the parent's ability to communicate with the child. But here the guardianship proceeding has effectively deprived Paul of any parenting role in Erika's life since Etsuko's death. And, under the guardianship, Akiko has chosen what school Erika will attend and who her friends will be. Thus, under these factors, as the trial court noted, Paul's chances in the Japanese courts of actually gaining custody of Erika are "slim to none." RP (Mar. 25, 2011) at 2-3. Thus, Japanese law does not protect Paul's substantive due process rights as a parent.

¶28 Additionally, we hesitate to enforce a judgment that would be unenforceable in the country that rendered the judgment. *See generally* RCW 6.40A.020(1)(b) (Courts will apply the Uniform Foreign-Country Money Judgments Recognition Act if the foreign judgment is "final, conclusive, and enforceable.").[11] Here, evidence shows that Akiko may not be able to enforce the child support order in Japan. Proof of Japanese law is a question of fact for our courts. *See Bogitch v. Potlatch Lumber Co.*, 93 Wash. 585, 589, 161 P. 487 (1916). Undisputed evidence before the trial court demonstrates that Japanese family courts may award child support but they lack the authority to actually enforce those awards. *International Parental Child Abduction: Japan*, U.S. DEP'T OF STATE, http://travel.state.gov/family/abduction/country/country_501.html (last visited Mar. 3,

[11] We adopt the same policy set forth in statutory schemes addressing recognition of foreign country judgments. Although the question before us is not statutory, but one of comity, we agree with the policy that we should not recognize or enforce a foreign judgment where it would not be enforceable in the foreign jurisdiction that issued the judgment.

2007) ("[C]ompliance with [Japanese] Family Court rulings is essentially voluntary, which renders any ruling unenforceable unless both parties agree."); Colin P.A. Jones, *In the Best Interests of the Court: What American Lawyers Need to Know about Child Custody and Visitation in Japan*, 8 Asian-Pac L. & Pol'y J. 166, 247 & n.314 (2007) (Japanese family court orders are widely recognized as unenforceable; paying child support is voluntary, thus compliance is not expected); Satoshi Minamikata, *Resolution of Disputes over Parental Rights and Duties in a Marital Dissolution Case in Japan: A Nonlitigious Approach in* Chotei *Family Court Mediation*, 39 Fam. L.Q. 489, 503 (2005) (approximately 66 percent of parents never make a child support payment).

¶29 We are satisfied that enforcing the Japanese divorce decree would violate Paul's procedural due process right to notice and the opportunity to be heard, Washington's policy protecting the parent-child relationship, and Paul's substantive due process right as a parent. Under these circumstances, we hold that the trial court did not err in declining to grant comity to the Japanese divorce decree.[12]

IV. Attorney Fees

¶30 In the TEDRA case, the Estate requested attorney fees under RAP 18.1. Because the Estate has not prevailed, we deny an award of fees to the Estate.

¶31 We reverse the trial court's order denying Paul's TEDRA petition to participate in the Estate. We affirm the trial court's summary judgment denying registration of the Japanese divorce decree.

Johanson, A.C.J., and Hunt, J., concur.

Review granted at 176 Wn.2d 1017 (2013).

---

[12] The Estate does not argue that we should consider separately the judgments for child support and those for property division and Etsuko's tort judgment.