
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In re the: | ) | No. 76007-6-I |
|  | ) |  |
| VERAH LANDON TESTAMENTARY | ) | DIVISION ONE |
| TRUST. | ) |  |
|  | ) |  |
|  | ) | UNPUBLISHED |
|  | ) |  |
|  | ) | FILED: April 2, 2018 |
|  | ) |  |
|  | ) |  |

COX, J. – The parties in this case appear again before us in a dispute over standing. In the prior appeal of the declaratory judgment action, we held that Jay Friet has standing to assert the claims he makes in that case.[1] Similarly, we conclude in this second TEDRA proceeding that he has standing to assert the claims here. Accordingly, we reverse the superior court order on revision and remand for further proceedings.[2]

---

[1] Friet v. Gaiser, 194 Wn. App. 1048 (2016), review denied, 187 Wn.2d 1005 (2017).

[2] We grant the Estate of Carol Gaiser's Motion for Substitution of Party, and substitute that estate, represented by its co-personal representatives Katherine and Steven Gaiser, in place of Carol.

In December 1963, Verah Landon ("Verah") made her last will and testament. The will created a testamentary trust for the benefit of her son, Herbert Landon ("Herbert") and her two living granddaughters, Marilyn Friet ("Marilyn") and Carol Gaiser ("Carol").[3] It also provided for division of the trust into shares upon "the death of [Herbert] and [Verah], or [their] simultaneous deaths."[4]

The trust was an original party to the operating agreement of Landon Enterprises LLC, which held substantial real property assets long owned and managed by the Landon family.[5] Marilyn and Carol were also original parties to that operating agreement.

Verah died in 1971. Herbert, her son, died some time afterwards. Marilyn died in 2007, before this proceeding commenced. Carol died in January 2018, while this appeal has been under our consideration. Carol's children, Katherine and Steven Gaiser (together, the "Gaisers") have been substituted as parties.

Upon the deaths of Verah and Herbert, the trust divided into equal shares. Specifically, there was one share for "each then grandchild" of Verah's and one share for "each then grandchild of [Verah's] having then living descendants."[6]

---

[3] Clerk's Papers at 12-13. We adopt the naming conventions of the parties.

[4] Id. at 13-14.

[5] Friet, 194 Wn. App. 1048.

[6] Clerk's Papers at 13.

2

The trust language further provides for benefits to "Living Descendants of a Deceased Granddaughter." The respective share allocated for "a deceased granddaughter having then living descendants shall be distributed," per stirpes, to that granddaughter's living descendants at the time the trust divided into equal shares.

The trust also states an optional distribution if a granddaughter dies after division of the trust into shares. Specifically, "[i]f a granddaughter should die subsequent to division of the Trust Estate into shares, her share remaining at her death shall be distributed, by right of representation, to her then living descendants."[7] If there are then no living descendants, then the "remainder [of her share] shall be added to, and shall be held, paid and distributed integrally with the other herein allocated share, whether distributed or undistributed."[8]

Marilyn and Carol both outlived Verah and Herbert. Marilyn had one child, Friet. Carol had two, Steven and Katherine. Thus, the trust was divided into four shares, one share to each of her two granddaughters and two shares for her three "then living descendants."

Marilyn died in 2007, her share terminated, and the remainder was distributed to Friet. As a result, Friet now owns 50 percent of the LLC's financial units.

In 2014, Carol commenced a TEDRA proceeding ("the 2014 Action") against Friet and trustee Jeff Wilson to remove the trustee. She claimed that the

---

[7] Id. at 14.

[8] Id.

3

trustee would not take certain actions related to the LLC's affairs. Wilson agreed to resign. Carol then successfully moved ex parte to dismiss Friet from the suit.

On learning of this, Friet moved to set aside his dismissal or in the alternative to intervene. He argued that he was a proper party to the action because he "own[ed] half of the property in which the Trust (the subject of this case) has a 22.5 percent ownership interest, and he is a business 'partner' with Carol Gaiser, the Trust's beneficiary."[9]

The matter went before a commissioner who denied Friet's motion. She determined that Friet had no legally cognizable interest in the trust. She then chose a successor trustee, Guardianship Services of Seattle ("GSS"), instead of the nominees put forth by the Gaisers.

Soon after, Friet commenced a declaratory judgment action concerning the LLC's management.[10] He named as defendants the Gaisers, the LLC, and GSS. He challenged Katherine's efforts to "dissolve the LLC, remove its manager, and terminate Friet as an LLC employee."[11] He sought declaratory and injunctive relief that would bar Katherine from interfering with LLC affairs.[12] And he claimed that GSS had failed to abide by the LLC's operating agreement.[13]

---

[9] Clerk's Papers at 510.

[10] No. 73448-2-I, slip op. at 2 (Wash. Ct. App. Jul. 5, 2016) (unpublished), http://www.courts.wa.gov/opinions/pdf/734482.pdf.

[11] Id.

[12] Id.

[13] Id. at 3.

4

The trial court dismissed that action on summary judgment, holding that Friet's claims as a non-member owner were derivative.[14] Friet appealed.[15]

We reversed and held that Friet had standing to bring a declaratory judgment action based on his financial ownership in the LLC.[16] We remanded for further proceedings.[17]

Prior to the filing of our decision in the declaratory judgment action, GSS commenced this proceeding ("the 2016 Action"). It is unclear to this court why it commenced a second proceeding rather than proceeding under the same cause number as the 2014 Action. In any event, GSS petitioned for an order of discharge and an order appointing a successor trustee. GSS named Carol as permissible distributee of the trust, Katherine as her attorney in fact, and the Gaisers as residual qualified beneficiaries. GSS neither named Friet as a party nor gave him notice of this action.

The petition also stated that GSS, Carol, the Gaisers, and the LLC had entered into an indemnity agreement. By its terms, Carol, the Gaisers, and the LLC "agree[d] to indemnify, defend, and hold Guardianship Services of Seattle harmless from all losses, damages, costs, expenses (including, without limitation,

---

[14] Id.

[15] Id.

[16] Id. at 11.

[17] Id.

attorney fees and litigation costs and litigation expenses)" in connection with GSS's conduct as trustee or as LLC member.[18]

A court commissioner granted GSS's petition and entered an order ("the Discharge Order") that discharged GSS from its trusteeship, ordered it to file a final report, and appointed the Gaisers as successor trustees.[19] The Discharge Order also directed the successor trustees to pay GSS's attorney fees, which included work opposing Friet in the declaratory judgment action. It further provided that these fees "shall not be subject to disgorgement under any circumstances."[20]

Thereafter, GSS petitioned for approval of its final report. GSS stated that attorney fees had not been paid from trust assets but rather from the LLC, purportedly based on the LLC's operating agreement.

Friet, after learning of these developments without notice from GSS or the Gaisers, moved in opposition to GSS's petition and sought instructions to the parties on how to proceed. In both motions, he argued that the Discharge Order and petition were void because he had never received notice and that the 2016 Action was improper for various other reasons. He sought to intervene in order to challenge approval of GSS's conduct as trustee, including the payment of fees from the LLC of which he is a 50 percent owner. The commissioner denied these motions.

---

[18] Clerk's Papers at 3.

[19] Id. at 66-71.

[20] Id. at 70.

6

The commissioner entered an order approving GSS's final report and discharge. He also approved GSS's conduct as trustee, including the payment of attorney fees from the LLC, not the trust.

Friet moved to revise the commissioner's ruling, which the revision judge denied. In colloquy on that motion, the parties stipulated to strike language from the Discharge Order insulating the approved attorney fees to GSS from disgorgement. This was to allow Friet to challenge the payment of fees from the LLC in the remanded declaratory judgment action. The trial court, nevertheless, held that Friet did not have an interest in the proceedings and could obtain other unspecified remedies to the extent that the outcome affected his ownership interests in the LLC.

Friet appealed. Thereafter, he moved to admit extensive further evidence on appeal. We deny that motion to admit additional evidence and proceed to the merits of the case, as originally briefed.

## STANDING

Friet argues that the revision judge improperly decided that he has no standing in this TEDRA proceedings as an "'other person who has an interest in the subject of [this] particular proceeding'" under RCW 11.96A.030(5)(i).[21] We agree. Because we do so, we do not reach his alternative argument that he has standing under RCW 11.96A.030(5)(e).

---

[21] (Emphasis omitted.)

*RCW 11.96A.030(5)(i)*

RCW 11.96A.110 requires that a party commencing a TEDRA action serve notice on all parties at least 20 days before a TEDRA petition is heard. A "party" for purposes of RCW 11.96A.030(5) is one "who has an interest in the subject of the particular proceeding" and is further identified in this section.[22]

This court reviews de novo issues of standing.[23]

One of the RCW 11.96A.030(5) categories includes "[a]ny other person who has an interest in the subject of the particular proceeding."[24] A party has a sufficient interest when he "has a direct, immediate, and legally ascertained pecuniary interest in the devolution of the testator's estate, such as would be impaired or defeated by the probate of the will."[25] This court has explained that this standard should be construed broadly to advance the legislative intent under TEDRA to promptly and nonjudicially resolve probate disputes.[26]

Friet argues that he qualifies under this category. He is correct.

---

[22] In re Estate of Bernard, 182 Wn. App. 692, 724, 332 P.3d 480 (2014).

[23] In re Estate of Becker, 177 Wn.2d 242, 246, 298 P.3d 720 (2013).

[24] RCW 11.96A.030(5)(i).

[25] Becker, 177 Wn.2d at 247.

[26] Estate of Toland v. Toland, 170 Wn. App. 828, 836, 286 P.3d 60 (2012), rev'd on other grounds by In re Estate of Toland, 180 Wn.2d 836, 329 P.3d 878 (2014).

Estate of Toland v. Toland[27] illustrates the broad scope of this provision. In that case, Paul Toland petitioned to intervene in the TEDRA proceeding involving the estate of his former wife, Etsuko Toland.[28] She had divorced Paul and remained with their daughter, Erika, in Japan while Paul returned to the United States.[29] Some years later, Etsuko died and left Erika her sole heir.[30]

Paul petitioned to intervene in the probate and asked to be appointed custodian of Erika's inheritance.[31] He argued that his interest in the disposition of the estate was "his fundamental liberty interest as a parent."[32]

Division Two agreed with his argument, concluding that "[c]ertainly, he has an interest in ensuring that the Estate is efficiently administered and that the funds it collects go to Erika."[33] It did so despite explicitly recognizing that Paul did not have custody of Erika and actually owed debts to the estate.[34] Because the purpose of TEDRA was to resolve disputes, Paul's disputes, and even his conflict of interest, only further warranted his inclusion.[35]

---

[27] 170 Wn. App. 828, 286 P.3d 60 (2012), rev'd on other grounds by In re Estate of Toland, 180 Wn.2d 836, 329 P.3d 878 (2014).

[28] Id. at 832.

[29] Id. at 831.

[30] Id. at 832.

[31] Id.

[32] Id. at 835.

[33] Id. at 836.

[34] Id.

[35] Id.

The supreme court, in construing RCW 11.96A.030, has held that the interest must be in the relevant proceedings, not the estate itself. In re Estate of Becker[36] illustrates this.

In that case, Tory Becker died and left everything to his youngest daughter.[37] His other daughters contested the will and Tory's surviving wife, Nancy Becker, who was excluded from the will, sought to participate in the proceedings that followed.[38] The supreme court was required to decide whether Nancy had a sufficient present interest to secure her standing as a party under TEDRA.[39]

The court reasoned that "[w]hile Tory's will expressly left nothing to Nancy, that will is being contested in this case by the adult daughters. If the will is declared invalid" Nancy would take part of the estate.[40] On this basis, the court concluded that "Nancy has a very substantial interest in the estate if the will contest were to be successful. Because Nancy would have a significant interest in the estate if the will were declared invalid, she has a direct interest in any settlement of the will contest."[41]

---

[36] 177 Wn.2d 242, 247, 298 P.3d 720 (2013).

[37] Id. at 244.

[38] Id. at 245.

[39] Id. at 247.

[40] Id.

[41] Id.

While the supreme court employed the word "interest" in that case to refer both to interests in the proceedings and interests in the estate, the holding in Becker makes clear that the dispositive interest must be in the relevant TEDRA proceedings, in that case "in any settlement of the will contest."[42]

As this court has discussed, the interest must be "specific" to the subject of the particular proceeding, meaning the relevant action.[43] For example, when certain parties challenged modification of a revocable trust and will, the subject was not the trust or will itself but "modification of the trust and will."[44]

Here, Friet contends that he is an interested party within the meaning of RCW 11.96A.030(5)(i) because he owns 50 percent of the LLC's financial shares. Based on that ownership, he argues that he has a sufficient interest in the proceedings to approve GSS's conduct to seek appointment of successor trustees.

Friet has a present interest in the appointment of the Gaisers to trusteeship as this would further the Gaisers' ability to participate in LLC affairs. As this court stated in the prior opinion involving these parties: "Katherine's continuous participation in the LLC's affairs may negatively affect [Friet]'s financial interests in the LLC."[45] We have no reason to believe that has changed in any material respect.

---

[42] Id.

[43] Bernard, 182 Wn. App. at 724.

[44] Id. at 725.

[45] Friet, No. 73448-2-I, slip op. at 7.

11

This issue is analogous to Toland as Friet's concern over the appointment's effect upon the LLC mirrors Paul Toland's concern for his daughter's inheritance. Whether either appellant had a legal interest in the estate at issue, the disposition of that estate would affect their interests. In Toland's case, it would affect his daughter's financial wellbeing. In Friet's case, it would affect the LLC's financial affairs.

For these reasons, Friet falls within the category of "party" under RCW 11.96A.030(5)(i). He has standing to pursue his interests in this proceeding.

GSS argues that Friet would have to own the entire LLC, or else Carol's or the trust's interest therein, to show an interest here. But Friet's argument here concerns his interest in the effect these proceedings could have on the LLC in which he has an interest, not his financial shares themselves. The LLC will be affected, and thus Friet's financial stake therein, by these proceedings.

GSS contends that to hold that Friet has standing as a 50 percent owner of the LLC "would allow anyone with any ownership interest in a corporate entity to intervene in trustee discharge and appointment proceedings if a trust also owns part of the entity." This argument mischaracterizes the circumstances of this case.

As Friet correctly notes, the trustee of this trust is the sole member of a member managed LLC. Thus, either the discharge or the appointment of the trustee has a far more substantial effect upon the LCC's operation than would the discharge and appointment of a trustee over a trust with only a financial share in a widely held entity.

12

Having concluded that Friet has standing under this statute, we briefly consider the Gaisers' and GSS's arguments that Friet should not be able to argue such standing. These arguments are not persuasive.

### Collateral Estoppel

The Gaisers contend that Friet is collaterally estopped from arguing that he has standing. The Gaisers are wrong given the nature of Friet's argument.

Collateral estoppel "bars relitigation of an issue in a subsequent proceeding involving the same parties."[46] The party asserting that the doctrine applies must satisfy all four elements, including:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of issue preclusion does not work an injustice on the party against whom it is applied.[47]

Here, the Gaisers contend that Friet already litigated the issue of his standing as an owner of the LLC in the 2014 TEDRA proceeding, bringing a motion to intervene that was denied. This argument ignores the necessity that the second and fourth elements of this doctrine must also exist. They do not in this case.

The 2014 Action has not ended in a judgment on the merits, as the Gaisers acknowledge. Moreover, as Division Three of this court has held, "prudential considerations of justiciability prevent a judgment of dismissal based

---

[46] Ullery v. Fulleton, 162 Wn. App. 596, 602, 256 P.3d 406 (2011).

[47] Id. at 602-03.

on lack of standing from constituting a judgment on the merits."[48] Thus, as a matter of law, the second element is not met. Accordingly, on this basis alone, collateral estoppel does not apply here.

Further, the Gaisers give no reason why denying Friet's participation in this case would not work an injustice upon him. If he were not involved as a party in these proceedings, his ability to challenge approval of GSS's conduct as trustee or the appointment of successor trustees would be impaired. This is an independent basis to conclude that collateral estoppel does not apply.

Because all four elements of collateral estoppel must be met, and two are lacking, this argument is unpersuasive.

*Invited Error*

GSS relatedly argues that this court should not review Friet's argument because Friet invited and failed to preserve any relevant error. This argument has no greater merit than that concerning collateral estoppel.

"The invited error doctrine prohibits a party from setting up an error below and then complaining of it on appeal."[49] On this basis, this court has declined to hear a party's argument when that party deliberately failed to raise it below for strategic reasons, and instead asked the trial court to uphold a ruling only to challenge it later.[50]

---

[48] Id. at 605.

[49] In re Marriage of Morris, 176 Wn. App. 893, 900, 309 P.3d 767 (2013).

[50] Id.

Here, Friet argued below that he was entitled to notice because of his financial ownership in the LLC in his opposition to the petition to approve the final trust report, in his motion for instruction, and orally before the commissioner on July 26, 2016. He did not explicitly argue that his LLC ownership interests entitled him to notice in his motion for revision. But GSS acknowledged Friet's argument in this regard in its response brief. And Friet elaborated upon it further in his reply brief. Accordingly, the record indicates that Friet neither invited error nor failed to preserve the alleged error for review.

Friet makes additional arguments in support of standing. Because of our disposition of the question on the basis just discussed, we need not reach these additional arguments.

## ATTORNEY FEES

All parties seek attorney fees on appeal. Additionally, Friet requests his fees incurred below. We deny all fee requests.

Under Washington law, a court may award attorney fees when authorized by contract, statute, or recognized ground in equity.[51]

RCW 11.96A.150(1) permits this court, in TEDRA proceedings, to order attorney fees to be awarded to any party from another party, from the trust, or from a nonprobate asset at issue. An award may be ordered for those fees incurred in trial or on appeal.[52]

---

[51] Berryman v. Metcalf, 177 Wn. App. 644, 656, 312 P.3d 745 (2013).

[52] RCW 11.96A.150(1).

"In exercising its discretion under this section, the court may consider any and all [equitable] factors that it deems to be relevant and appropriate."[53] While the touchstone of an award "'is whether the litigation resulted in a substantial benefit to the estate,'" an award may be ordered even without such a benefit.[54] Notably, this statute does not require a party to have substantially prevailed.[55]

GSS's argument consists of a single citation to a case wherein Division Two of this court held that "in general, where a prevailing party is entitled to attorney fees below, they are entitled to attorney fees if they prevail on appeal."[56] This is inapplicable here because RCW 11.96A.150(1) does not rest on whether a party prevailed. Instead it rests on this court's broad and equitable discretion. Because GSS provides no argument why equity favors an award of fees to it, we need not discuss this request any further.

The Gaisers argue that they are entitled to fees because Friet "had no basis for his actions in this matter" and has merely cost the trust unnecessary expenses. Because this argument is plainly wrong, we need not discuss it further.

---

[53] Id.

[54] In re Estate of Mower, 193 Wn. App. 706, 728, 374 P.3d 180 (quoting In re Estate of Black, 116 Wn. App. 476, 490, 66 P.3d 670 (2003)), review denied, 186 Wn.2d 1031 (2016); RCW 11.96A.150(1).

[55] Mower, 193 Wn. App. at 728.

[56] Id. (citing Sharbono v. Universal Underwriters Ins. Co., 139 Wn. App. 383, 423, 161 P.3d 406 (2007)).

Friet requests his award against GSS and the Gaisers, jointly and severally. He provides extensive argument why the equities favor his position. He argues that "this litigation was necessitated by GSS's, Katherine's, and Steven's deliberate evasion of TEDRA's notice requirements and attempts to strip [him] of his financial interests in the LLC."

He further contends that counsel for GSS and the Gaisers failed to comply with RPC 3.3(f), which requires attorneys in an ex parte proceeding to "inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse." Specifically, he alleges that GSS and the Gaisers improperly failed to inform the 2016 commissioner of certain information, including the 2014 refusal to appoint the Gaisers' nominees as successor trustee, earlier denial of attorney fees to GSS, or this court's earlier opinion in the declaratory judgment action.

Friet's challenge below and on appeal has not benefited the trust. Although this court may, on rare occasion, award fees without benefit to the trust, we see no reason to do so in this case.

We reverse the order on revision as invalid and remand for further proceedings. We deny all requests for attorney fees.

Cox, J.

WE CONCUR:

Spearman, J.

Leach, J.

17