# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE JUL 1 0 2014

Madsen, C.J.

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on July 10, 2014

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN THE MATTER OF THE ESTATE OF ETSUKO FUTAGI TOLAND, | ) ) ) | No. 88045-0 |
| Deceased. | ) ) ) | |
| BRYCE H. DILLE, as Personal Representative of the Estate of Etsuko Futagi Toland, | ) ) ) ) | |
| Petitioner, | ) ) | En Banc |
| v. | ) ) | |
| PETER PAUL TOLAND, JR., | ) ) ) | |
| Respondent. | ) ) | Filed JUL 1 0 2014 |

MADSEN, C.J.—The estate of Etsuko Futagi Toland (Estate) asks that we reverse the Court of Appeals decision upholding summary judgment that denied registration of a Japanese divorce decree awarding Etsuko Toland a monetary award against her former husband, Peter Paul Toland.[1] The primary question is whether the trial court abused its discretion in denying recognition of the divorce decree under comity principles because

---

[1] We refer to Etsuko Toland by her first name and, following the Court of Appeals, refer to Peter Paul Toland by his middle name.

Paul was not given notice of a Japanese guardianship proceeding involving the couple's daughter.

We reverse the Court of Appeals. The 2008 guardianship has no effect on Paul's legal obligations under the 2006 divorce decree. The divorce decree is valid, and whether it should be recognized as a matter of comity does not depend on whether Paul had notice of the guardianship proceeding. We hold that the trial court abused its discretion and remand for registration of the divorce decree.

## FACTS

In 1995, Paul and Etsuko married in Japan. Paul is a career naval officer. In 1996, the United States Navy reassigned him to duty in the states, where he and Etsuko lived for a time in Kent, Washington. After he was reassigned back to Japan, Paul and Etsuko lived on a naval base not far from Tokyo.

On October 17, 2002, the couple's daughter, Erika, was born. Erika has never lived outside of Japan, and she speaks Japanese. In 2003, Etsuko became a naturalized citizen of the United States.

In July 2003, the couple separated and Etsuko and Erika lived for a short time near the naval base and then moved into the home of Etsuko's mother, Akiko Futagi. Etsuko claimed that Paul was mentally abusive and had an extramarital affair. Paul claimed that Etsuko suffered from severe postpartum depression but refused medical treatment.

The parties filed competing divorce actions. In September 2003, Paul filed for dissolution of marriage in Pierce County Superior Court but failed to serve Etsuko. In

No. 88045-0

November 2003, she petitioned for mediation in Japanese family court. The mediation, which is a prerequisite to seeking a Japanese divorce, failed, and Etsuko filed for divorce. During this period, Paul had visitation rights that he exercised twice. In the meantime, the Pierce County court stayed the Washington state proceedings in light of the proceedings underway in Japan. In 2004 Paul was reassigned to Washington, DC, and in 2005, he filed for divorce in Virginia, where he resided.

In the Japanese divorce proceedings, Paul was represented by several Japanese attorneys, apparently from the same firm. On September 29, 2005, the Japanese court orally announced the divorce decree. In March 2006, the court finalized the decree, though Paul had discharged his attorneys by this time. The Japanese court found that Paul had been psychologically abusive, had an extramarital affair with another Japanese woman, and had not exercised visitation under the mediation agreement. The divorce decree divided the parties' property, awarded custody of Erika to Etsuko, ordered Paul to pay child support, and awarded damages to Etsuko for mental anguish.

Meanwhile, the Virginia court dismissed the divorce action that had been filed there after a Virginia judge conferred with the Pierce County Superior Court judge and the Pierce County court dismissed the petition here in Washington after the Japanese court entered the final divorce decree. The Court of Appeals affirmed dismissal of the Pierce County dissolution action. *Toland v. Toland*, noted at 140 Wn. App. 1015, 2007

3

WL 2379722.[2] Among other things, the Court of Appeals awarded attorney fees to Etsuko on the ground that the appeal was frivolous.

On October 31, 2007, Etsuko committed suicide. There is some question about how Paul learned of this, but regardless, there is no question that he and Etsuko's sister, Yoko Futagi, communicated about Erika coming to live in the United States with Paul. Erika continued, however, to live in Japan with Etsuko's mother, Akiko Futagi. Akiko had frequently cared for Erika while Etsuko worked.

In January 2008, Akiko successfully filed for guardianship of Erika and was appointed guardian. The Estate maintains the guardianship was necessary so that Akiko could enroll Erika in school and obtain medical care, among other things. The Estate also maintains that after Etsuko's death, Paul refused to pay child support or to pay the attorney fees awarded by the Court of Appeals following dismissal of his petition for dissolution of marriage in Pierce County.

In May 2009, Yoko Futagi filed a probate action in Washington, among other things, to collect the child support and the attorney fees award for Erika's benefit, as Erika is Etsuko's sole heir. However, Ms. Futagi could not post bond and the trial court appointed attorney Bryce Dille to serve as personal representative of the Estate. A guardian ad litem was appointed to represent Erika's interests, but he has not taken an active role in the present action.

---

[2] In its decision, the Court of Appeals said that the record showed Paul had engaged in various legal maneuvers to obtain jurisdiction over his wife and child in the United States, including the unsuccessful divorce action brought in Virginia. *Toland*, 2007 WL 2379722, at *8. The Court of Appeals noted that the trial court found that Paul appeared to be forum shopping. *Id.*

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

The Estate then filed an action seeking to register the Japanese divorce decree for enforcement of its money judgments, relying on the Uniform Enforcement of Foreign Judgments Act, chapter 6.36 RCW, and the former Uniform Foreign-Country Money Judgments Recognition Act, former chapter 6.40 RCW (2008). Paul denied the judgments were enforceable and moved to dismiss the case or for an order denying recognition of the Japanese divorce decree. The trial court denied the motion to dismiss, saying that it could not "find anything facially wrong with the Japanese divorce decree as it addressed all of the issues, including support, property division, and other matters, the judgments of which are of valid amounts under Japanese law. The property and support aspects of the Japanese Divorce Decree need not be re-litigated." Clerk's Papers at 648.

However, neither chapter 6.36 RCW nor chapter 6.40 RCW applied to allow for recognition of the decree. Chapter 6.40 RCW was repealed by Laws of 2009, chapter 363, section 14, effective July 26, 2009. At the same time, the current Uniform Foreign-Country Money Judgments Recognition Act, chapter 6.40A RCW, was enacted. LAWS OF 2009, ch. 363, §§ 1-13. Like its predecessor, this new act expressly states that it does not apply to "[a] judgment for divorce, support, or maintenance, or other judgment rendered in connection with domestic relations." RCW 6.40A.020(2)(c).

The trial court explained, however, that the decree could be recognized if the Estate established that this would be appropriate under the doctrine of comity. Pursuant to the savings clause in RCW 6.40A.090 and notwithstanding the scope of chapter 6.40A RCW, the act "does not prevent the recognition under principles of comity or otherwise

5

of a foreign-country judgment." RCW 6.40A.090. The trial court also said, though, that as part of this showing the Estate would have to establish that Paul had received actual notice of the guardianship action before Etsuko's mother was appointed guardian or show in some other way that due process and fairness concerns were satisfied.

The Estate retained a Japanese lawyer, Mr. Yorimichi Ishikawa, as an expert in Japanese family law, whose undisputed testimony established that Paul received no notice of the guardianship proceedings because such notice is not required under Japanese law. He also testified that the guardianship does not preclude Paul from seeking custody of Erika in Japan. Paul moved for summary judgment dismissing the Estate's action seeking recognition of the Japanese divorce decree. He argued dismissal was required as a matter of law because he did not receive notice of the guardianship proceedings. In response, the Estate argued that recognition of the divorce decree under comity principles should not be precluded because of a guardianship that occurred almost two years after the divorce decree was final. In addition, the Estate pointed out that Paul's own expert in a custody action he brought in Maryland agreed that the guardianship proceeding did not prejudice Paul's right to seek custody in Japan.

The trial court granted Paul's summary judgment motion, explaining in an oral ruling that comity was denied principally because of the lack of notice in the guardianship proceedings.

The Estate appealed. The Court of Appeals affirmed. *Estate of Toland v. Toland*, 170 Wn. App. 828, 286 P.3d 60 (2012). The court concluded that the divorce decree by

No. 88045-0

itself satisfied comity principles. However, like the trial court the Court of Appeals determined that comity should not be applied because Akiko became Erika's guardian without notice to Paul of the guardianship proceedings. The Court of Appeals said that considering the divorce decree alone would require ignoring the practical and harmful consequences of the guardianship proceeding. *Id.* at 839. The court concluded that under due process principles, Paul would have been entitled to notice of the guardianship proceedings, *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); that as the sole surviving parent, Paul would be entitled under Washington state law to control of Erika absent some justification for withholding custody, RCW 26.16.125; and that his substantive due process interests in his child would be abridged if the decree is recognized, *see Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000). *Estate of Toland*, 170 Wn. App. at 839-40.

We note that the present action was consolidated in the Court of Appeals with Paul's appeal of summary judgment dismissing his petition, under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, to intervene in the probate action brought by the Estate. He argued that he was entitled to intervene as an interested party because he is the only parent of the heir of the Estate, Erika. Among other things, he asked to be appointed custodian of the inheritance. The trial court denied intervention on the ground that Paul had a conflict of interest since he owed the Estate money. The Court of Appeals reversed, holding that because TEDRA is intended to apply broadly and

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Paul is the father of the sole minor heir of the estate, he is an interested party under the act. Our review in the present case does not concern the motion to intervene or TEDRA.

Finally, while matters were proceeding in Washington, as indicated, Paul brought a custody action in Maryland against Akiko Futagi in October 2009. The custody action was dismissed after the Maryland trial court found jurisdiction was not proper under the Uniform Child Custody Jurisdiction and Enforcement Act (ch. 26.27 RCW), and held inapplicable an exception that permits exercise of jurisdiction over a complaint when the child custody laws of a foreign country violate fundamental principles of human rights. Maryland's highest court affirmed the trial court decision, holding that Akiko's appointment as guardian did not implicate fundamental principles of human rights because it did not sever Paul's right to custody. *Toland v. Futagi*, 425 Md. 365, 40 A.3d 1051 (2012). The court pointed out that a guardian's role is separate and distinct from that of a child's custodian. *Id*. at 390. The Japanese decree of guardianship was not equivalent to custody, as both parties' expert witnesses attested (Akiko Futagi submitted Mr. Ishikawa's same testimony that was presented in the present action), and Paul remained able to seek Erika's custody in Japan. *Id*. Accordingly, the guardianship did not implicate fundamental principles of human rights. *Id*.

The Maryland court determined, in response to Paul's arguments grounded in the whole of Japanese custody law, including the methods and criteria involved in awarding custody, that any question about Erika's custody was not ripe and would require the court to render an advisory opinion based on a future matter, which it would not do. *Id*.

8

ANALYSIS

As noted, the Uniform Foreign-Country Money Judgments Recognition Act does not apply to govern whether the Japanese divorce decree will be given recognition in this state. However, its savings clause permits recognition of a foreign judgment under principles of comity. RCW 6.40A.090.

> "Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws."

*Mayekawa Mfg. Co. v. Sasaki*, 76 Wn. App. 791, 799, 888 P.2d 183 (1995) (quoting *Somportex Ltd. v. Phila. Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971)); *New W. Fisheries, Inc. v. Dep't of Revenue*, 106 Wn. App. 370, 379, 22 P.3d 1274 (2001) (same).

The comity doctrine allows a court, acting within its discretion, to give effect to the law and resulting orders of another jurisdiction out of deference and respect, considering the interests of each jurisdiction. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 160, 744 P.2d 1032, 750 P.2d 254 (1987); *MacKenzie v. Barthol*, 142 Wn. App. 235, 240, 173 P.3d 980 (2007). Under the *Restatement (Second) of Conflict of Laws* § 98 (1971 & Supp. 1989) (amended 1988)), "[a] valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States so far as the immediate parties and the underlying claim are concerned." The foreign court must have had jurisdiction and there must have

9

been opportunity for a full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it is sitting, or fraud in procuring the judgment.

*Hilton v. Guyot*, 159 U.S. 113, 202, 16 S. Ct. 139, 40 L. Ed. 95 (1895); RESTATEMENT §

98 cmt. c (1971). A judgment is valid if the court had jurisdiction, there was notice, and

the court was competent. *Rains v. Dep't of Soc. & Health Servs.*, 98 Wn. App. 127, 135,

989 P.2d 558 (1999); RESTATEMENT § 92 (1971).[3]

If a foreign judgment is so contrary to the laws and policies of a state that

enforcing it would seriously interfere with the state's policies or laws or is prejudicial to

the state's interests, then comity does not apply. *Hilton*, 159 U.S. at 165.[4] However, the

mere fact that the law of the foreign jurisdiction and our own law are different does not

establish a violation of this state's public policy. *Richardson v. Pac. Power & Light Co.*,

11 Wn.2d 288, 301, 118 P.2d 985 (1941).

---

[3] Under section 92:
> A judgment is valid if
>     (a) the state in which it is rendered has jurisdiction to act judicially in the case; and
>     (b) a reasonable method of notification is employed and a reasonable opportunity to be heard is afforded to persons affected; and
>     (c) the judgment is rendered by a competent court; and
>     (d) there is compliance with such requirements of the state of rendition as are necessary for the valid exercise of power by the court.

[4] *Hilton* also sets forth a reciprocity requirement for comity to apply, but this requirement is no longer followed in most states, including Washington. *See Tonga Air Servs., Ltd. v. Fowler*, 118 Wn.2d 718, 726, 826 P.2d 204 (1992).

When comity principles support recognition of a foreign judgment, the judgment will generally be given the same effect as the judgment of a sister state. *Rains*, 98 Wn. App. at 135 (citing RESTATEMENT § 117 cmt. c (1971)).

Both the trial court and the Court of Appeals found that the Japanese divorce decree is a valid foreign judgment that satisfies the conditions for comity to apply. This conclusion is correct. Paul has not shown that the Japanese court issuing the divorce decree was incompetent. He had the opportunity to contest the decree and in fact did so with the assistance of a team of Japanese attorneys. The divorce decree is supported by a lengthy written decision. The fact that damages were awarded for fault (psychological abuse) that would not be available in our state does not render the decree unfair or so antithetical to our law and policy as to preclude the decree's recognition as a matter of comity. Importantly, Paul had a right to appeal the divorce decree but did not do so.

Paul maintains, however, that comity should not apply to the decree. He points out that *Restatement* § 98 provides that a foreign judgment may be recognized only insofar as the immediate parties to the foreign proceedings are concerned. RESTATEMENT § 98 (1971). He contends this requirement is not satisfied here because the present action does not involve Etsuko and himself, but instead involves the Estate and himself. The Estate, Paul urges, is not an "immediate party" to the decree.

Comment g to *Restatement* § 98, as revised in 1988, explains that a foreign judgment that satisfies requirements for application of comity will be recognized to the same extent as a sister state judgment so far as the immediate parties and the underlying

11

claim are concerned. RESTATEMENT § 98 & cmt. g (1971 & Supp. 1989). Comment g notes that beyond this scope, there may be questions about the extent to which persons other than the parties are bound by the judgment and whether foreign rules of privity, collateral estoppel, splitting a claim, or res judicata might apply.[5]

Emphasizing that we do not strictly follow section 98 and its comments as if they set out binding state law, we note that with the explanation in comment g, the "immediate parties" and "underlying claim" limitations on scope are not a bar to recognition of the divorce decree here. There are no indications of any foreign rules affecting the scope of the persons or claims affected by the judgments in the divorce decree.

But Paul urges, and the Court of Appeals agreed, that there is a concern about recognizing the decree here if Akiko could not enforce the decree in Japan, the country rendering the judgments. *Estate of Toland*, 170 Wn. App. at 842.

---

[5] Comment g, as revised in 1988, states:

> *Extent of recognition*: A foreign nation judgment which meets the conditions specified in Comment *d* will be given the same degree of recognition as a sister State judgment, subject to the qualification discussed in Comment *f*, so far as the immediate parties and the underlying claim are concerned. It is uncertain, however, whether an American court will always give similar effect to the foreign rules of privity in determining what persons, other than the parties, are bound by the judgment (compare § 94, Comment *d*) and to the foreign rules as to splitting a claim or as to collateral estoppel (compare § 95, Comments *e* and *g*). Normally, an American court would apply the foreign rules as to these matters if these rules are substantially the same as the rules of the American court. It is also uncertain what effect would be given by an American court to foreign rules of res judicata with respect to findings by the court that it had jurisdiction over the defendant or over a thing or status or that it had competence over the subject matter of the controversy (see §§ 96-97).

RESTATEMENT § 98 cmt. g (Supp. 1989).

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We first note that there is a distinction to be drawn between a judgment that suffers some defect that makes it unenforceable in the rendering country and the claim here that mechanisms are not in place for enforcement. This appears to be a pervasive issue in Japan that extends to civil judgments in general and more particularly to family court decrees.[6] Next, while Paul is ostensibly relying on Japanese law, the materials he has submitted are of a more general nature, i.e., law review articles and travel warnings rather than Japanese statutes or relevant court decisions. Third, even assuming that Akiko's ability to enforce the child support judgment in the decree is relevant, the record indicates that the United States military has a policy of facilitating service members' child support obligations. Although the record is not entirely clear, it suggests that at least at one point the military inquired and was apparently satisfied that Paul was making required support payments. Fourth, declining comity on the ground that enforcement is difficult in Japan would be counter to our own strong state policy favoring satisfaction of child support obligations and counter to the Japanese court's determination that Paul has a legal requirement to satisfy unpaid child support. In this respect our state law comports with the Japanese award of child support.

It is troubling that a party might preclude comity applying to a judgment based on the difficulty of collection in the foreign jurisdiction when payment of the underlying

---

[6] Evidently, support is generally voluntary and family court orders are widely recognized as unenforceable. Colin P.A. Jones, *In The Best Interests of the Court: What American Lawyers Need to Know about Child Custody and Visitation in Japan*, 8 ASIAN-PAC. L. & POL'Y J. 166, 247 & n.314 (2007), *cited in Estate of Toland*, 170 Wn. App. at 842; *see* Satoshi Minamikata, *Resolution of Disputes over Parental Rights and Duties in a Marital Dissolution Case in Japan: A Nonlitigious Approach in* Chotei *Family Court Mediation*, 39 FAM. L.Q. 489, 493-94, 502-03 (Summer 2005), *cited in Estate of Toland*, 170 Wn. App. at 842.

obligation has been entirely in the control of the same party who does not want the judgment recognized. Comity is a doctrine of practice, convenience, and expediency, and it involves exercising respect for and deference to the legal determinations in another country. *Haberman*, 109 Wn.2d at 160-61.

Finally, and most importantly, the Japanese decree is valid and states a legally cognizable judgment for child support. Under the specific facts here, we will not refuse comity on the ground that Akiko might be unable to enforce the decree in Japan.

The next question is whether the trial court abused its discretion as a matter of law by deciding that whether comity applies depends upon the guardianship proceedings and whether Paul had notice of these proceedings sufficient to satisfy due process in this country. "A trial court abuses its discretion by issuing manifestly unreasonable rulings or rulings based on untenable grounds, such as a ruling contrary to law." *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 919, 296 P.3d 860 (2013) (citing *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993)). We conclude that in basing the decision about comity on the entirely separate guardianship proceeding, the trial court made an error of law that constitutes an abuse of discretion.

Akiko obtained the guardianship almost two years after the divorce decree was final and only after Etsuko committed suicide. There is nothing on the face of the guardianship that connects it to the divorce decree judgments. Akiko was not a party to the divorce decree and is not a named party in estate proceedings here. Put simply, the

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

guardianship is unrelated to the divorce decree and has no bearing on the issue of comity and its application to the divorce decree as a matter of law.

Paul claims, though, that his parental rights were violated by the guardianship proceeding in the absence of notice to him. The Court of Appeals of Maryland disagreed, reasoning that a guardianship is distinct from and not equivalent to a custody determination and the Japanese guardianship did not sever Paul's custodial rights to his child. *Toland*, 425 Md. at 390. The court declined to grant Paul's request "to review all Japanese child custody law, including the methodology and criteria for awarding custody, even though there was no custodial determination in the present case." *Id*. The court concluded that "[a]ny question regarding Erika's custody, which is not ripe, would require us to render an advisory opinion based upon 'a matter in the future, contingent and uncertain,' which is 'a long forbidden practice in this State.'" *Id*. (quoting *Hickory Point P'ship v. Anne Arundel County*, 316 Md. 118, 129, 557 A.2d 626 (1989)).

In our view, the Maryland court appropriately declined to address custody matters that were not ripe for review. Although we are not faced with a custody action, similar concerns are present in that Paul asks that we decline to permit any recognition of a Japanese court decree based on a view of the entirety of Japanese law and practice involving children of Japanese and non-Japanese parents and the possibility of future impropriety in his own case if he tried to obtain custody in Japan. Paul wants us to assume that the guardianship effectively determines custody, that his parental rights have been violated, and that his rights would be trammeled should he try to pursue a custody

claim in Japan. Like the Maryland court, we do not consider the guardianship to be conclusive on the matter of custody, particularly in light of his own expert witness's testimony. And unlike the circumstances in much of the secondary authority Paul cites, this case does not present questions of custody as between a Japanese and non-Japanese parent.[7]

The trial court's grant of summary judgment was based on its erroneous consideration of the guardianship proceedings. As the court determined, absent consideration of the guardianship, the divorce decree meets the requirements for comity to apply. Upon reversing summary judgment, we may direct summary judgment in favor of the nonmoving party if there are no disputed material facts and as a matter of law the nonmoving party is entitled to summary judgment. *See, e.g., Impecoven v. Dep't of Revenue*, 120 Wn.2d 357, 365, 841 P.2d 752 (1992); *Rubenser v. Felice*, 58 Wn.2d 862, 866, 365 P.2d 320 (1961). The Estate is entitled to summary judgment on the issue whether the divorce decree should be recognized as a valid foreign judgment.

The dissent complains about our grant of summary judgment in favor of the nonmoving party, saying that Paul has not had the opportunity to respond to a motion for

---

[7] We also decline to address the matter of child abduction. We do not agree that when Etsuko and Paul separated and she took Erika with her to live at Akiko's home, Etsuko "abducted" Erika. Unlike the usual cases discussed in the materials that Paul has submitted, Etsuko did not abscond with Erika or secrete her away. She informed Paul where she was and the two of them were after the separation, and she and Paul proceeded through mediation together, where he had visitation rights that he did not fully execute. While the secondary authority that Paul submits indicates there is a problem with international child abductions to Japan, it is not an issue that we need address in this case.

16

summary judgment. However, this will often be the case when a reviewing court concludes that summary judgment should be granted in favor of the nonmoving party.

The dissent believes, though, that Paul should have the chance to produce evidence showing possible disputed issues of material fact and, in particular, evidence showing whether entering the foreign order would be repugnant to public policy or be unjust. Dissent at 3.

But fact questions that the dissent thinks are material concern whether the Japanese court would respect Paul's rights as a parent if he had sought custody or whether, if he obtained an order giving him custody, he would be able to enforce it. The dissent thinks that depending on whether Paul can prove his allegations, it may be unjust or repugnant to public policy to require Paul to pay the judgment under the divorce decree.

But this case concerns the question whether the divorce decree entered two years before the guardianship proceeding will be recognized. Paul had notice of the divorce proceedings, was a party to the litigation, was represented by a Japanese firm familiar with Japanese divorce law, and had the assistance of four attorneys. Notwithstanding the money judgment under the decree, he chose not to appeal the divorce judgment, although he had the opportunity to do so, and thus did not challenge the child support awarded in the decree. Paul has never actually sought custody of Erika.[8]

---

[8] It is also important to bear in mind that under Washington law, payment of a child support obligation cannot be conditioned on custody or visitation privileges. *E.g.*, *Malfait v. Malfait*, 54 Wn.2d 413, 417-18, 341 P.2d 154 (1959) ("[t]he question of custody and support of children is not to be determined upon the basis of the desires of the parties or used as a penalty or reward for

17

No. 88045-0

As a matter of law, the divorce decree should be recognized under well-settled principles of comity.

## CONCLUSION

The Japanese divorce decree is a valid foreign judgment that meets requirements for comity, as both the trial court and the Court of Appeals correctly determined. As a matter of law the trial court abused its discretion when it nevertheless declined to accord comity to the divorce decree based upon guardianship proceedings occurring almost two years after the divorce decree was final. Accordingly, the trial court improperly granted summary judgment dismissal to Paul Toland and the Court of Appeals erroneously affirmed that decision. We reverse the Court of Appeals and remand with directions that summary judgment be granted in favor of the Estate and the divorce decree be recognized as a valid judgment in this state.

---

their conduct"; the father's obligation to provide payments for the support of his child is not contingent upon the continued exercise of a granted right of visitation); *Wheeler v. Wheeler*, 37 Wn.2d 159, 222 P.2d 400 (1950) (the father's inability to visit the children does not relieve him from paying support).

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 88045-0

Madsen, C.J.

WE CONCUR:

González, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 88045-0

WIGGINS, J. (concurring in part/dissenting in part)—I disagree with the majority opinion because it grants summary judgment to a nonmoving party. Paul Toland, the party against whom the majority enters summary judgment, did not receive notice that the court was considering summary judgment against him. This absence of notice deprived him of the opportunity to demonstrate triable issues. Without knowing what facts would have existed if Paul[1] had had the opportunity to respond, the majority enters summary judgment.

The Washington State Court Rules do not authorize courts to grant summary judgment to nonmoving parties. The rules permit summary judgment if "there is no genuine issue as to any material fact and . . . the *moving* party is entitled to a judgment as a matter of law." CR 56(c) (emphasis added). This is in contrast to the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. (FRCP) 56(f)(1). In 2010, the United States Supreme Court amended the federal rules to address granting summary judgment to nonmoving parties. *See* FRCP 56 Advisory Committee Notes, 2010 Amendments. The amended rules provide, "After giving notice and a reasonable time

---

[1] Like the majority, we refer to the Tolands by their first names, meaning no disrespect.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

to respond, the court may . . . grant summary judgment for a nonmovant . . . ." FRCP 56(f)(1). Paul had neither notice nor a reasonable time to respond. Therefore, we should not enter summary judgment against him. While I agree with the majority that the trial court erroneously granted summary judgment in his favor, I would remand the case to the trial court. Consequently, I concur in part and dissent in part.

I first discuss comity because whether Paul is "entitled to judgment as a matter of law" depends on our analysis of the doctrine and its exceptions. I conclude by analyzing whether the parties are entitled to summary judgment.

## I. Comity

Our decision depends heavily on the doctrine of comity. Comity is the recognition of a foreign state's legislative, executive, or judicial acts by our State. *Mayekawa Mfg. Co. v. Sasaki*, 76 Wn. App. 791, 799, 888 P.2d 183 (1995); *see Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 160-61, 744 P.2d 1032, 750 P.2d 254 (1987). It is not a rule of law. *Mayekawa Mfg.*, 76 Wn. App. at 799. Rather, we extend comity out of deference and respect and for the purposes of practice, convenience, and expediency. *Haberman*, 109 Wn.2d 160-61. It is not an imperative or obligation upon our courts but lies within their *discretion*. *Id.*; *New W. Fisheries, Inc. v. Dep't of Revenue*, 106 Wn. App. 370, 379, 22 P.3d 1274 (2001); *MacKenzie v. Barthol*, 142 Wn. App. 235, 240, 173 P.3d 980 (2007); *State v. Medlock*, 86 Wn. App. 89, 96, 935 P.2d 693 (1997).

While comity is not a rule of law, case law has developed well-established principles for the doctrine. As a general rule, "'[a] valid judgment rendered in a foreign nation after a fair trial in a contested proceeding will be recognized in the United States

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

so far as the immediate parties and the underlying cause of action are concerned.'" *Rains v. Dep't of Soc. & Health Servs.*, 98 Wn. App. 127, 135, 989 P.2d 558 (1999) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 98 (1971)).

However, we will not recognize otherwise valid foreign orders if they are repugnant to the public policy of our state or "'inflict an injustice on our own citizens.'" *MacKenzie*, 142 Wn. App. at 240 (quoting *Reynolds v. Day*, 79 Wash. 499, 506, 140 P. 681 (1914)). When deciding whether to extend comity, we examine whether there was evidence of "prejudice in the court" or, under the law, "fraud in procuring the judgment, or any other special reason why the comity of this nation should not allow it full effect . . . ." *Hilton v. Guyot*, 159 U.S. 113, 202-03, 16 S. Ct. 139, 40 L. Ed. 95 (1895).

Here, the majority holds that the trial court abused its discretion by considering the guardianship proceeding when denying comity. Majority at 14. The majority fails to cite any case law stating that a court may not look to facts occurring after entry of a foreign judgment or to subsequent proceedings. The majority simply concludes that the guardianship proceeding is unrelated to the divorce, the proceeding "has no bearing on the issue of comity," and the trial court abused its discretion by considering the proceeding. *Id.* I disagree.

A trial court should be free to examine all relevant facts when deciding whether to exercise its discretion and grant comity.[2] Our court should not limit the equitable

---

[2] A judge could reasonably conclude that the guardianship proceeding is potentially relevant to whether an exception to comity applies. Both proceedings concerned Paul's rights as a parent.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

factors a trial court may consider in deciding whether to grant comity. Here, the trial court should have been free to examine all relevant facts, including the guardianship proceeding. Instead, the majority looks *only* for a valid judgment. *See* majority at 17. It refuses to examine whether Paul's parental rights were otherwise violated.

## II. Neither Party Is Entitled to Summary Judgment

Summary judgment is appropriate only if the moving party establishes that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. CR 56(a), (c). We grant motions only if reasonable people could reach one conclusion based on the evidence when viewing the facts in the light most favorable to the nonmoving party. *Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168, 177, 125 P.3d 119 (2005).

Here, I agree with the majority that Paul is not entitled to judgment as a matter of law but disagree with the majority's reasoning. It was not an error for the trial court to consider the guardianship proceeding; nonetheless, the proceeding did not entitle Paul to judgment as a matter of law. The evidence before the court, when viewed in the light most favorable to the estate, does not rise to such an extreme level of injustice as to invoke an exception to comity. Therefore, I would reverse the order granting Paul summary judgment.

However, the majority goes beyond simply reversing the order granting summary judgment. It holds that the Estate is entitled to judgment as a matter of law. I disagree with its assessment.

Paul had no notice or opportunity to respond to a motion for summary judgment by offering evidence of a genuine issue of material fact. The majority effectively holds

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

that Paul could never prove that enforcing the divorce decree would trigger an exception to comity. This confuses a discretionary doctrine with a strict rule of law. It also assumes that we have a complete record.

We do not have a complete record. Paul limited his motion for summary judgment and the attached affidavit to a very narrow issue. The issue was in response to the court's ruling that it would not register the divorce decree unless, at a minimum, the estate proved that Paul was given notice of the guardianship proceeding. Paul was not afforded notice, so he filed for summary judgment on this lone issue, submitting a two-and-a-half-page affidavit.

Summary judgment should be granted only after Paul has a full and fair opportunity to show a genuine issue of material fact. *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011); *Moton v. Cowart*, 631 F.3d 1337, 1343 (11th Cir. 2011); *Penobscot Indian Nation v. Key Bank of Me.*, 112 F.3d 538, 562 (1st Cir. 1997) (Courts may grant summary judgment *sua sponte*. "Two conditions, however, circumscribe the district court's exercise of this power: first, discovery must be 'sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts;' second, the district court must 'give[] the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense.'" (alteration in original) (quoting *Berkovitz v. Home Box Office, Inc.*, 89 F.3d 24, 29 (1st Cir. 1996))). For these reasons, we should reverse summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

I concur in part and dissent in part.

_____
Wiggins, J.

Gsey McCld, J.

Stepn, J.